George JONES, Petitioner,

v.

The STATE OF MONTANA and E. C. Ellsworth, Jr., Warden, Montana State Prison, et al., Respondents.

No. 1161.

United States District Court
D. Montana,
Butte Division.

July 6, 1964.

Findings of Fact and Conclusions of Law July 20, 1964.

Krest Cyr, Butte, Mont., for petitioner.

Forrest H. Anderson, Atty. Gen. of Montana, Donald A. Garrity, Asst. Atty. Gen., for respondents.

MURRAY, Chief Judge.

On March 22, 1957, in the District Court of the Second Judicial District of the State of Montana, in and for the County of Silver Bow, the petitioner was convicted on his plea of guilty of the offense of second degree murder, and sentenced to the Montana State Prison for a term of 25 years, where he is presently confined. He seeks leave to file in this court in forma pauperis a petition for Writ of Habeas Corpus charging that his plea of guilty in the state court was brought about by coercion and duress, and he requests the appointment of counsel.

Leave to proceed in forma pauperis is granted and said petition is ordered filed without prepayment of costs.

The petition makes the following allegations concerning his plea of guilty in the State Court:

"1. That the petitioner at the time of his trial and prior to sentencing the petitioner was under coercion and duress.

"2. That court appointed counsel was not effectiver (sic), proper qualified or mindful of there (sic) duties.

"Petitioner prior to sentenceing (sic) and dureing (sic) the time of petitioners incarceration in the Silver Bow county jail the petitioner was under coercion and duress. This is the main factor that the defendant at that time pleaded guilty to the crime.

"Court appointed counsel along with a member of the sheriffs office or from the county attorneys office came to the said jail bringing with them a rope which they showed said petitioner, stateing (sic): 'That if he didn't cop a plea of guilty the State would try him for first degree murder and hang him. That the rope was newly bought for that purpose. And that they would help hang him.'

"Thus being threatened petition (sic) also did not fully understand the charges against him for he can

niether (sic) read nor write[1]. So plead guilty to the crime.

\*　　\*　　\*　　\*　　\*

"The above shows that court appointed counsel were not mindful of there (sic) duties which is to say the least. It also shows that counsel did not care if the defendant was guilty or not, and seemed more interested in getting a conviction for the county attorney's office."

These allegations, if proved, establish a denial to petitioner of his right to due process under the Fourteenth Amendment, because a conviction on a coerced plea of guilty is no more consistent with due process than a conviction supported by a coerced confession, and would require a hearing by this court if Petitioner has exhausted his state court remedies as required by 28 U.S.C.A. § 2254. Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302; Behrens v. Hironimus, 166 F.2d 245, 247 (C.A. 4–1948); Fullen v. State of Wyoming, 274 F.2d 840 (C.A. 10–1960). See also United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (C.A. 2–1960).

### EXHAUSTION OF STATE COURT REMEDIES

By order dated October 17, 1963, in Cause No. 1076 in this court, the court denied a similar petition for Writ of Habeas Corpus by petitioner on the ground that he had not exhausted his state court remedies as required by 28 U.S.C.A. § 2254. At that time it appeared there was still a state remedy available to petitioner in the form of a petition to the State District Court for leave to withdraw his plea of guilty and upon the denial of such petition by the District Court an appeal to the Montana Supreme Court would lie from such denial. In re Amors Petition, Mont., 388 P.2d 270; In re Petition of Ebeling, Mont., 387 P.2d 302; In re Petition of Brown, 142 Mont. 620, 386 P.2d 73, all Montana cases.

In his present petition petitioner alleges:

"Appeal in coram nobis, in forma pauperis along with motion of appointment of counsel to the Montana Supreme Court.

"Coram Nobis denied, Appointment of Counsel denied.

\*　　\*　　\*　　\*　　\*

"The petitioners (sic) asked the district court, of Silver Bow County for a withdrawl (sic) of his guilty plea. He was giveing (sic) a hearing that was a farce in which to say the least. Court appointed counsel for the petitioner would not call witnesses to dispute the testimony of the State witnesses. The honorable Jurist who presided at the hearing stated that the petitioner could not possibly know what was in said petition for he can neither read nor write.

"Without witnesses to support the petitioner it was a one sided hearing."

An examination of the record in the District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, and inquiry of the Clerk of the Supreme Court of the State of Montana reveals the following proceedings in petitioner's case subsequent to his conviction:

On November 5, 1963, there was filed in the State District Court a handwritten "Petition of George Jones for Withdrawal of Plea," reciting substantially the same grounds for withdrawal of plea as are recited in his present petition. Apparently no action was taken on such petition.

On December 11, 1963, there was filed in the Supreme Court of the State of Montana a handwritten "Petition of George Jones for Writ of Mandamus," in which petitioner sought to compel a ruling by the State District Court on his petition for withdrawal of plea. The Montana Supreme Court responded to

---

1. The petition contains an affidavit to the effect that it was prepared for petitioner by another inmate and read over to him.

this petition by its order of December 20, 1963, by directing that "the petition be forwarded to the Clerk of the District Court of Silver Bow County, Montana, where the record is, with directions that he call the same to the attention of the judge presiding at the time of hearing this matter for such appropriate action as appears to that court to be appropriate under the law."

Thereafter, the State District Court apparently appointed counsel for petitioner and on January 22, 1964, there was filed in that court a typewritten "Motion to Vacate and Set Aside Judgment and Motion to Withdraw Plea of Guilty and substitute Plea of Not Guilty", signed by the court-appointed counsel. These motions to vacate and to withdraw plea were set for hearing and heard on February 4, 1964, and were denied by a minute entry order on the same day.

No appeal from the denial of the motions to vacate and to withdraw plea has been taken to the Montana Supreme Court. Section 94–8105, R.C.M.1947, provides that in criminal cases "An appeal from a judgment may be taken within six months after its rendition, and from an order within sixty days after it is made." Thus, the time within which an appeal could have been taken from the order denying the motions has expired.

Therefore, it appears that at the time of presenting and filing his present petition in this court, there are no further state court remedies still available to petitioner. In Fay v. Noia, 372 U.S. 391 at 399, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) the Supreme Court held that the requirement of 28 U.S.C. § 2254 that a person in state custody exhaust state remedies before coming to a federal court for vindication of federal constitutional rights refers only to state remedies still open to him at the time he files his application for habeas corpus in the federal court.

In connection with petitioner's failure to appeal to the Montana Supreme Court the denial of his motions to vacate and to withdraw his plea of guilty, the Supreme Court in Fay v. Noia, supra, 372

U.S. at pages 438 and 439, 83 S.Ct. at page 849, held that

"the federal habeas judge may in his discretion deny relief to an applicant *who has deliberately by-passed the orderly procedure of the state courts* and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. * * * If a habeas applicant, after consultation with competent legal counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— *though of course only after the federal court has satisfied itself by holding a hearing or by some other means, of the facts bearing upon the applicant's default."*

The court believes that the record here, showing the persistent efforts of petitioner to get his claims of coercion and duress determined, and considering his illiteracy, does not warrant a finding of a deliberate by-passing by petitioner of the orderly procedure of the state courts by his failure to appeal from the order denying his motions to vacate judgment and change his plea. This, however, is a question that will have to be further considered upon the hearing that the court finds is necessary.

## NECESSITY FOR HEARING DESPITE STATE COURT'S DENIAL, AFTER HEARING, OF MOTIONS

In Brown v. Allen, 344 U.S. 443, 465, 73 S.Ct. 397, 411, 97 L.Ed. 469 (1953) the Supreme Court stated:

"As the state and federal courts have the same responsibilities to pro-

tect persons from violation of their constitutional rights, we conclude that a federal district court may decline, without a rehearing of the facts, to award a writ of habeas corpus to a state prisoner where the legality of such detention has been determined, on the facts presented, by the highest state court with jurisdiction, whether through affirmance of the judgment on appeal or denial of post-conviction remedies."

This rule was the subject of considerable elaboration by the Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) in the section of the opinion numbered III at pages 312 to 318, 83 S.Ct. at pages 756–759. The court points out that before a federal district court in a habeas corpus case may, under the above quoted rule of Brown v. Allen, rely on the determination of a state court and deny habeas corpus without a hearing, it must find that the state court "has after a full hearing reliably found the relevant facts". The court went on and laid down guide lines for determining whether the state court has "reliably found the relevant facts", the following excerpts from which, when applied to the record in this case, demonstrate that a hearing must be held herein:

> "There cannot even be the semblance of a full and fair hearing (in the state court) unless the state court actually reached and decided the issues of fact tendered by the defendant. Thus, if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts. No relevant findings have been made unless the state court decided the constitutional claim tendered by the defendant on the merits. *If relief has been denied in prior state collateral proceedings after a hearing but without opinion, it is often likely that the decision is based upon a procedural issue—that the claim is not collaterally cognizable—and not on the merits.* \* \* \*

> "If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia. *In some cases this will be impossible, and the Federal District Court will be compelled to hold a hearing.*

> "Reconstruction is not possible if it is unclear whether the state finder applied correct constitutional standards in disposing of the claim. Under such circumstances the District Court cannot ascertain whether the state court found the law or the facts adversely to the petitioner's contentions. Since the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts, a hearing is compelled to ascertain the facts."

No findings of fact or opinion appear in the State Court file in connection with the denial of petitioner's motions to vacate and withdraw his plea. Such denial was accomplished by a minute entry order reading as follows:

> "This day motion to vacate and set aside judgment, and motion to withdraw plea of guilty and substitute plea of not guilty coming on regularly for hearing, the State of Montana represented by Deputy County Attorney J. T. Prothero, Esq. and the defendant present and represented by counsel J. Peterson, Esq. Thereupon witnesses were sworn and testimony heard and concluded. Thereupon motion to vacate and set aside judgment and motion to withdraw plea of guilty and substitute plea of not guilty is by the court denied."

From this record it is impossible to ascertain the basis upon which the State District Court denied the motions.

More important, it is impossible to determine whether the State District Court "reliably found the relevant facts" with reference to the federal constitutional issue tendered by petitioner, as required by Townsend v. Sain, supra, before this court may dispense with a hearing when such issues are raised.

It therefore appears that a Writ of Habeas Corpus must issue in this case and a hearing be held on the following issues:

First: Whether in the circumstances of this case, petitioner's failure to appeal the denial of his motions to vacate and withdraw his plea of guilty amounted to such a "deliberate by-passing of the orderly procedure of the state courts" within the meaning of Fay v. Noia, supra, as to warrant this court denying relief on that ground; and

Second: If petitioner has not deliberately by-passed the orderly procedure of the state court, on the issues raised by the petition for the Writ of Habeas Corpus.

Now, therefore, it is ordered and this does order that the Clerk of this Court forthwith issue a Writ of Habeas Corpus directed to Edward C. Ellsworth, Warden of the Montana State Prison, requiring the production of said George Jones before the court on the 14th day of July, 1964, at 10:00 o'clock A. M., Daylight Savings Time, in the courtroom of the United States District Court in the Post Office building, at Butte, Montana, for a hearing on the issues above enumerated.

It is further ordered that Krest Cyr, Esq., be and he hereby is appointed as counsel for said petitioner, to represent him at said hearing.

It is further ordered and this does order that the Writ of Habeas Corpus, together with a copy of the petition for Writ of Habeas Corpus and a copy of this Opinion and Order be forthwith served upon Edward C. Ellsworth, Warden of the Montana State Prison by the United States Marshal and that copies of the Writ, Petition and this Opinion and Order be served upon the following:

Attorney General of the
State of Montana
Mr. Krest Cyr, and
Petitioner George Jones

It is further ordered that a return to the Writ may be filed by Respondents on or before July 13, 1964.

By its opinion and order filed herein on July 6, 1964, the court granted petitioner's Petition for Writ of Habeas Corpus, appointed counsel, and set the matter for hearing on July 14, 1964. For the convenience of some of the witnesses, the hearing was advanced to July 13, 1964, and the hearing was had on July 13th and July 14th, 1964, petitioner being personally present and represented by his court appointed counsel Krest Cyr, Esq., on both days. Respondents were represented at the hearing by their counsel Donald A. Garrity, Esq., Assistant Attorney General of the State of Montana. Witnesses were sworn, and evidence, both oral and documentary, was received, and the court having considered all of the evidence, now makes the following

### FINDINGS OF FACT

#### I

On March 5, 1957, in the District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, petitioner was charged by an information, filed after leave of court was first had and obtained, with the offense of First Degree Murder, alleged to have been committed on the previous day, March 4, 1957. Immediately upon the filing of the information, the said District Court of the Second Judicial District of the State of Montana, the Hon. T. E. Downey, Judge presiding, after ascertaining that petitioner was without funds to employ counsel, appointed Thomas F. Kiely, Esq., and Thomas F. Joyce, Esq., two competent, able and experienced attorneys, to represent petitioner on said First Degree Murder Charge, and on the advice of said counsel petitioner entered a plea of not guilty to said charge on the same day, March 5, 1957.

## II

Immediately after the plea of not guilty was entered, the court appointed counsel consulted with petitioner, who informed them at that time that he had not committed the offense charged, and they obtained from him the names of witnesses who might have knowledge or information helpful to the defense of the case. From the time of their appointment on March 5, 1957, until petitioner's eventual plea of guilty, these court appointed counsel devoted their time almost exclusively to investigation and preparation for trial of petitioner. They consulted with petitioner a minimum of 10 times in a two week period and fully advised him of the law with respect to the various degrees of murder and the penalties therefor. They interviewed every prospective witness whose name or identity was furnished them by petitioner, as well as those witnesses listed on the information, and also interviewed other people who their own investigation indicated might possibly have knowledge or information concerning the case. Despite this extensive and intensive investigation, counsel were unable to locate any evidence or witnesses that would support a defense to the charge, or support petitioner's assertion that he had not committed the offense. On the contrary, their investigation revealed that immediately after the homicide petitioner spontaneously informed at least a half dozen reliable witnesses including his landlord, neighbors, police officers and the County Attorney and his deputy that he had killed the victim and had pointed out and identified the knife with which he stabbed her. Counsel advised petitioner that they were still ready and willing to defend him on a trial on his not guilty plea, but that they believed, as a result of their investigation, that a jury would not believe his denial of the offense in the face of the overwhelming evidence against him. Petitioner, about two or three days before he changed his plea admitted to his counsel that he had committed the murder.

## III

In the course of their investigation and preparation for trial, petitioner's counsel discussed the case with members of the County Attorney's office. In the course of these discussions, petitioner's counsel argued to the County Attorney's staff that the state did not have sufficient evidence of premeditation to support a first degree murder charge, and ultimately succeeded in convincing the County Attorney's office that the charge should be reduced to second degree murder. After securing agreement of the County Attorney to a reduction of the charge to second degree murder, petitioner's counsel consulted with the District Judge as to what sentence might be imposed in the event of a plea of guilty to second degree murder under the circumstances of the case, and determined that a 25 year sentence might be expected.

## IV

Court appointed counsel then fully advised petitioner of these developments, and petitioner freely and voluntarily indicated a desire to enter a plea of guilty to second degree murder. On March 22, 1957, petitioner appeared before the State District Court with his court appointed counsel and freely and voluntarily, with full and complete understanding of what he was doing, and the consequences thereof, and not acting under coercion or duress, entered his plea of guilty to second degree murder and received a sentence of 25 years.

## V

The court specifically finds, contrary to the allegations in the petition, that petitioner's court appointed counsel did not visit him in the county jail with a member of the County Attorney's office or the sheriff's office and bring with them a rope and state to petitioner, "that if he didn't cop a plea of guilty the State would try him for first degree murder and hang him. That the rope was newly bought for that purpose. And that they would help hang him." The court further specifically finds that court appoint-

ed counsel never visited petitioner in the county jail in company with a member of the county attorney's office, and further specifically finds that no rope was ever brought in to the county jail and shown to petitioner by his court appointed counsel or either of them.

## VI

The court further specifically finds that petitioner's plea of guilty to second degree murder was not coerced in any manner by threats or pressure of any kind by his court appointed counsel or anyone else, but was freely, voluntarily and understandingly made.

## VII

The court further specifically finds that petitioner's court appointed counsel competently, diligently and effectively represented him on the murder charge with which he was faced.

## VIII

Thereafter, and on November 5, 1963, petitioner filed in the District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, a petition for withdrawal of plea, wherein he made allegations concerning his court appointed counsel bringing a rope into the jail and threatening him with hanging if he did not plead guilty similar to the allegations in the present petition. When this petition was not immediately acted upon, petitioner, on December 11, 1963, filed with the Montana Supreme Court a petition for writ of mandamus, which was referred by the Montana Supreme Court to the District Court of the Second Judicial District. The District Court appointed counsel for petitioner, who filed a formal Motion to Vacate and Set Aside Judgment and Motion to Withdraw Plea of Guilty and Substitute Plea of Not Guilty. After hearing the motions were denied.

## IX

The court specifically finds that petitioner, contrary to the allegations in his present petition, was granted a full, fair and complete hearing on his Motion to Withdraw his Plea of Guilty in the District Court of the Second Judicial District of the State of Montana, and was diligently and effectively represented by competent counsel.

## X

At the conclusion of the state court hearing on the motion to withdraw plea, the State District Court ordered that a transcript of the hearing be forwarded to the Montana Supreme Court. In view of this order of the court petitioner's court appointed counsel felt that the petitioner's Motion to Withdraw his plea would be before the Supreme Court and that no formal appeal from the denial of the Motion was in order, and so advised petitioner. Under these circumstances, the court finds that petitioner's failure to prosecute an appeal from the denial of his motion was not the deliberate by-passing of the orderly procedure of the state courts, as discussed in Fay v. Noia, 372 U.S. 391, 438, 439, 83 S. Ct. 822, 9 L.Ed.2d 837.

From the foregoing Findings of Fact, the court draws the following

## CONCLUSIONS OF LAW

### I

This court has jurisdiction of this proceeding under the provisions of 28 U.S. C. §§ 2241(c) (3) and 2254.

### II

That in all of the proceedings in the District Court of the Second Judicial District of the State of Montana, in and for the County of Silver Bow, both leading up to petitioner's conviction on his plea of guilty and the post-conviction proceedings, petitioner was afforded due process of law and the effective assistance of counsel.

### III

That the detention of the petitioner in the Montana State Prison, pursuant to the judgment of conviction of the crime of second degree murder and sentence entered in the District Court of the Second Judicial District of the State of Mon-

tana in and for the County of Silver Bow on the 22nd day of March, 1957, is in all respects legal and in accord with due process of law.

## DISCUSSION

Under the recent decisions of the United States Supreme Court in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770; and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, it seems that every person convicted of a crime, state or federal, is entitled to at least one trip back from prison to attend a hearing on the constitutionality of his conviction—*if he is willing, regardless of truth, to make the necessary allegations concerning the unconstitutionality of his conviction.* If charges of deprivation of constitutional rights in obtaining the conviction are made which cannot be conclusively established to be false from the record (and this can rarely be done), a hearing must be held on such charges, no matter how unbelievable or incredible the charges may appear on their face. Despite the provision of 28 U.S.C. § 2255 [1] that an application thereunder may be entertained and determined "without requiring the production of the prisoner at the hearing", and the suggestion of the Supreme Court in Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, and Sanders v. United States, supra, that it may not in all cases be necessary to produce the prisoner at the hearing, it is difficult to visualize a hearing that would satisfy the requirements of Townsend v. Sain, supra, and Sanders v. United States, supra, at which the prisoner was not permitted to be present and testify. The grounds upon which charges of unconstitutionality of conviction or sentence are most frequently made, such as illegal search and seizure, coercion and duress in obtaining a confession or plea, ineffective assistance of counsel, or lack of understanding at the time of entering a plea, are grounds that by their very nature require the testimony of the prisoner for support. Often his is the only testimony available in support of the claim. Certainly an ex parte hearing at which only testimony refuting the charges is heard would satisfy no concept of due process. Speaking of the provision in Section 2255 that an application under that section may be determined "without the production of the prisoner at the hearing", the Supreme Court in Sanders v. United States, supra, 373 U.S. at 21, 83 S.Ct. at 1080, said: "This does not mean that a prisoner can be prevented from testifying in support of a substantial claim where his testimony would be material."

The foregoing observations are not, and are not intended to be, critical of the cited decisions of the Supreme Court. Indeed, this court agrees with those decisions, for individual liberty is such an important basic and fundamental human right that any and every claim that it is being taken away illegally and unconstitutionally deserves full attention and careful investigation. The Sanders, Fay and Townsend decisions require just that, full attention and careful investigation, including a hearing, of any direct and positive allegations of facts that would indicate that a person is confined *to prison as a result of the violation of his rights under the federal constitution.* In the case of state prisoners, this hearing need not necessarily be held in federal courts, but it must be held in federal courts if the state courts do not investigate and hear the claim as required by Townsend v. Sain.

---

1. This section deals with persons in federal custody and provides a procedure for attacking a sentence in the sentencing court rather than seeking habeas corpus m the court in the district of confinement. However, in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, the Supreme Court held the motion procedure under Sec. 2255 and habeas corpus are *substantial equivalents,* and Sanders v. United States, *supra,* makes it clear that what is therein said concerning the necessity for a hearing in a 2255 proceeding applies equally to a habeas corpus proceeding.

780

There has been, and is, however, growing abuse of this solicitude of our courts for individual human liberty by inmates of our prisons, as evidenced by the growing numbers of petitions for post-conviction relief of various kinds appearing in the law reports, both state and federal, only a very minute percentage of which are found to be meritorious. Not only do these ever increasing petitions cast a heavy burden workwise on our courts, but with the publicity given the charges contained in the petition, they create doubt in the public mind as to the honesty and integrity, not only of the courts, but of the legal profession, our law enforcement officials, and our whole judicial system as well. In probably over 99 percent of the cases, the charges levied in the petition are found upon investigation to be unfounded and untrue. There is evidenced a growing tendency on the part of these petitioners to irresponsibly swear to any charge, regardless of its truth, which they believe will obtain for them a brief respite from prison life to attend a hearing. Such tendency was noted by the Montana Supreme Court in Petition of Amor, 389 P.2d 180, 181, as follows:

"This second assertion as to incompetency of counsel is not accepted. Counsel was and is eminently qualified, experienced, and held in high regard by the Courts and Bar of this State. This charge of incompetency of counsel seems to come of recent times from all defendants who are convicted and will not be further discussed."

The instant case is a prime example of such irresponsible attitude and complete disregard for truth. In a prior petition filed in this court October 17, 1963, Jones swore to the following allegation "Further that counsel for the defense entered the county jail with a rope and told your petitioner that if he did not enter a plea of guilty, they would hang him and that the rope that counsel had was one they bought just for that purpose. And that counsel himself would personally help them hang the defendant."

This court denied that petition on the ground petitioner had not exhausted his state court evidence. Thereupon Jones swore to a petition containing substantially the same allegation which he filed in the State District Court on November 5, 1963. However, at his hearing on this petition in the State District Court on February 4, 1964, petitioner, under oath, testified that a Mr. Nolar had written his petition for him and that he, Jones, had told Nolar what to put in the petition. He then testified:

"Q. You did tell him what to put in the petition?

"A. Yes.

"Q. In that, did you tell him that Mr. Joyce and Mr. Kiley brought a rope into the jail and said that the rope was brought by the State for the purpose of hanging you?

"A. No.

"Q. You didn't tell that to Mr. Nolar—

"A. No, I didn't, I never told that to nobody.

"Q. That is not true then, is that right?

"A. That's right. That's not true, no.

"Q. Mr. Joyce and Mr. Kiley didn't bring a rope into the jail?

"A. No.

"Q. Or threaten you that you would be hung and they would help hang you, is that so, with that rope?

"A. I didn't say that.

*     *     *     *     *     *

"Q. But you deny that they did this—they did not do it, is that right?

"A. They didn't bring no rope, no, I never told nobody that they did."

Despite this denial under oath of the allegations which he had sworn to in previous petitions, petitioner again in the instant petition filed in this court on July 6, 1964, swore to substantially the same allegations as contained in the previous

petition, and at the hearing in this court on July 14, 1964, Jones, under oath in this court testified:

"A. * * * so about two days later then, why Mr. Joyce and Mr.— I forget his name—these (indicating) came over and had a rope and said—

"Q. Mr. Joyce and who?

"A. Mr. Kiley.

"Q. And who else?

"A. I can't think of his name.

"Q. This gentlemen here (indicating)?

"A. Yes, sir.

"Q. Mr. Prothero.

"A. Yes, sir.

"Q. Of the County Attorney's office.

"A. Yes, sir. They said if I was taken, went to the jury and was found guilty, why they was going to hang me and Mr. Joyce he was going to help hang me.

"Q. You say they had a rope?

"A. Yes.

"Q. Who had the rope?

"A. Mr. Joyce.

* * * * * *

"Q. Would you describe the rope to the court?

"A. The rope was coiled up. I couldn't tell too much about it. It looked to be about an inch and a half or two inch rope. It looked to be about a six or eight foot rope.

"Q. And what were the words now that were used, as well as you can remember?

"A. They said if I didn't plead guilty, if I went to a jury trial and was found guilty they was going to hang me and Mr. Joyce said he was going to help them."

This whole record screams perjury. Not only does it demonstrate petitioner's utter disregard for truth, but it illustrates the ingratitude, the indecency, the willingness of petitioner and others like him to make any kind of scandalous, scurrilous, unfair false charge that they feel will serve their own ends that is becoming so apparent in the law reports of post-conviction proceedings. This record further illustrates the time and expense which these unmeritorious and unfounded petitions involve, and the burden they place on members of the Bar appointed to represent petitioners.

Such flagrant abuse of judicial process cannot be tolerated, and a copy of this order will be referred to the United States Attorney for presentation to the grand jury.

The court wishes to take this opportunity to thank Mr. Krest Cyr, an experienced and highly respected member of the Bar of this court, for his services as court appointed counsel for petitioner herein.

Therefore, it is ordered and this does order that the petition herein be dismissed, the Writ of Habeas Corpus be quashed, and the said George Jones is hereby remanded to the custody of the respondent E. C. Ellsworth, Jr., Warden of the Montana State Prison.

It is further ordered and this does order that the Clerk of this court forthwith deliver to the United States Attorney a copy of these Findings of Fact, Conclusions of Law and Order for the United States Attorney's consideration of seeking an indictment against petitioner for perjury.

It is further ordered that the Clerk of this court forthwith notify the parties of the making of these Findings of Fact, Conclusions of Law and Order, by mailing copies thereof to them.