**Application and Petition of Leighton L. ALDEN for Writ of Habeas Corpus in Forma Pauperis, Petitioner,**

**v.**

**The STATE OF MONTANA and its Agents, Edward Ellsworth, Jr., Warden of the Montana State Prison, Deer Lodge, Montana, et al., Respondents.**

**No. 1177.**

United States District Court
D. Montana,
Butte Division.

Aug. 27, 1964.

On the Merits Oct. 26, 1964.

William H. Coldiron and John C. Hauck, Butte, Mont., for petitioner.

Donald A. Garrity, Asst. Atty. Gen., and Donald J. Beighle, Sp. Asst. Atty. Gen. of State of Montana, for respondents.

MURRAY, Chief Judge.

Petitioner, confined to Montana State Prison pursuant to a conviction on his plea of guilty in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, on three separate felony charges, seeks leave to file in this court in forma pauperis a petition for writ of habeas corpus, and he also seeks the appointment of counsel. Leave to file said petition without pre-payment of costs is granted.

■ By orders dated February 24, 1964, and May 14, 1964, this court has denied prior similar petitions of petitioner on the ground that he had available to him a state court remedy. However, the present petition has attached to it a copy of a memo opinion of the Supreme Court of the State of Montana, dated July 30, 1964, in cause No. 10834, affirming the denial by the State District Court of Fallon County of an application by petitioner for writ of error coram nobis. In re Petition of Alden, Mont., 394 P.2d 251. It therefore appears that at the time of presenting his present petition there are no further state court remedies available to petitioner and under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, the petitioner is now entitled to come to this court for vindication of his federal constitutional rights.

The present petition is long and rambling, but it appears therefrom that petitioner was arrested in the State of South Dakota and was later extradited to the State of Montana, where in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, he was charged in three separate cases with the commission of three separate felonies. In cause No. 382 in the Fallon County District Court, he was charged with uttering a fraudulent check; in cause No. 383, he was charged with grand larceny—depriving the owner of his automobile and appropriating the same for his own use; cause No. 384 contained two counts of uttering a fraudulent check, the first count of which was later dismissed. On January 10, 1963, in the Fallon County District Court, petitioner entered pleas of guilty in each of the cases and in cause No. 382 was sentenced to 3 years, in cause No. 383 was sentenced to 7 years and in cause No. 384 was sentenced to 8 years, said sentences to run consecutively.

■ The petition contains nine separate grounds upon which petitioner alleges he was deprived of his rights to due process of law and equal protection of the law as follows:

1. Illegal and unreasonable search and seizure.
2. Arrest and detention without probable cause or warrants.
3. Failure of being formally charged before a magistrate.
4. Extradition false, and illegally executed on invalid warrant.
5. Extradition from South Dakota to Montana on invalid warrant.
6. Irregularity of informations filed in District Court.
7. Self incrimination.
8. Denial of transcript and judgment roll.
9. Denial of assistance of counsel.

The first five enumerated grounds have to do with the alleged illegal arrest of petitioner and alleged unlawful search

and seizure at the time of his arrest in South Dakota and the alleged illegal extradition of petitioner to Montana. It is to be noted that there is no allegation that any irregularities, which may have occurred in the arrest, search and seizure and extradition of petitioner to Montana, were instrumental in coercing or influencing petitioner's pleas of guilty. "Complaints in regard to arrest and search are matters for defense * * *. One who pleads guilty waives these defenses and is not in a position to successfully move for a writ of habeas corpus on claims of alleged illegal arrest, search and seizure. Cf. United States v. Zavada, 291 F.2d 189 (6th Cir., 1961); United States v. Salzano, 241 F.2d 849 (2d Cir., 1957)." United States ex rel. Hazen v. Maroney, 217 F.Supp. 328 (D.C.1963). Neither are irregularities in extradition proceedings grounds for the issuance of a writ of habeas corpus. Pettibone v. Nichols, 203 U.S. 192, 193, 27 S.Ct. 111, 51 L.Ed. 148; United States v. Eight Boxes, etc., 2 Cir., 105 F.2d 896, 900; Yodock v. United States, 3 Cir., 196 F.2d 1018; Strand v. Schmittroth, 9 Cir., 251 F.2d 590, 600; Klink v. Looney, 10 Cir., 262 F.2d 119, 121.

 The allegations under ground No. 6 "Irregularity of Informations filed in District Court" are difficult to understand. It appears, however, that petitioner is under the mistaken belief that due process of law and equal protection of the law required the charges which were filed against him in the three cases to be filed in some different order than that in which they were filed. In other words, he seems to contend that the grand larceny charge should have been filed first rather than the fraudulent check charge. This contention is, of course, without merit. The same paragraph also contains an allegation that "Petitioner alleges that he had been talked into a coerced confession, not knowing or understanding the ways of the law and having been under the excessive use of alcohol for a period of years had numbed his thinking and reasoning power which made him mentally incompetent to cope with the law." As pointed out, petitioner pled guilty and no confession, coerced or otherwise, was received against him.

█ Under ground No. 7 "Self incrimination", the petitioner alleges that he "unknowingly" gave information to various law enforcement officials which incriminated him. Again, by virtue of his pleas of guilty, such alleged incriminating information was not used in evidence against petitioner and there is no allegation that his plea of guilty was influenced by virtue of his having given such information to the authorities.

█ As to ground No. 8 "Denial of transcript and judgment roll", it appears from the records that the request for the transcript was first made long after the time for appeal had expired and the Montana court was justified in denying the copy of the transcript and judgment roll on that ground. Furthermore, it appears that a transcript and judgment roll would not contain matters pertaining to the proceedings in connection with the arrest and extradition which occurred in South Dakota and it is in connection with these matters that petitioner alleges he desired the transcript and judgment roll.

Ground No. 9 "Denial to the assistance of counsel", contains two subsections, subsection (a) having to do with the alleged denial of counsel in South Dakota prior to petitioner's extradition to Montana. As pointed out above, irregularities in petitioner's extradition to Montana are not grounds for the issuance of a writ of habeas corpus.

Paragraph 9(b) contains the following allegation:

"During the detention in the county jail in Fallon County, State of Montana, your petitioner was at no time asked whether he requested councel (sic), nor did the Justice of Peace or any of the officials explain to him of the rights he was entitled to, the only thing said prior to the District Court hearing was that if he continued to go along with them (the officials) he would receive a

much lighter sentence on the charges. With what seemed that unless he did agree to cooperate with them he would be charged not only with the fraudulent check but all the charges and prior convictions also, which the county attorney said could amount to about 70 years., Your petitioner alleges that due to that threat, he was in no position to argue and fight the charges against him and that when he went to court he was afraid to ask for councel (sic) and a jury trial, for fear of an excessive sentence., That at the hearing in the district court he then waved (sic) assistance and entered a plea of guilty not knowing that the county attorney had put him in such a position that he was forced to waive rights that he definitely needed, but did not understand the ways of the law, so therefore did not understandingly waive the right guaranteed him in the Sixth and Fourteenth Amendments to the right to councel (sic)."

 In order that unlettered prisoners without friends or funds may be protected, legalistic requirements in examining application should be disregarded. Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761; Fulwood v. Clemmer, 111 U.S.App.D.C. 184, 295 F.2d 171, 173. Applying this principle, it seems that sub-paragraph 9(b) above quoted, fairly interpreted, charges that petitioner's plea of guilty was induced by the promise that he would receive a much lighter sentence if he continued to go along with the officers; that he was threatened that unless he did agree to cooperate by entering pleas of guilty he would be charged with prior convictions which could, upon conviction, result in a sentence of about 70 years; and that because of such promises and threats he waived counsel and a jury trial and entered his pleas of guilty. If these allegations can be proved to be true, petitioner is entitled to have his sentence vacated. In Machibroda v. United States,

368 U.S. 487, at 493, 82 S.Ct. 510, at 513, 7 L.Ed.2d 473, the Supreme Court said:

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See Walker v. Johnston, 312 U.S. 275, [61 S.Ct. 574, 85 L.Ed. 830]; Waley v. Johnston, 316 U.S. 101 [62 S.Ct. 964, 86 L.Ed. 1302]; Shelton v. United States, 356 U.S. 26 [78 S.Ct. 563, 2 L.Ed.2d 579], reversing, 5 Cir., 246 F.2d 571."

It would seem equally true that waiver of counsel, coerced by threats or promises, would be no waiver.

From the record, it appears that similar contentions were presented to the State District Court for Fallon County, Montana, on several occasions, and the court there, after reviewing the records, files and minutes in the proceedings in Criminal causes Nos. 382, 383 and 384, entered Findings of Fact adverse to petitioner's contentions and denied relief. However, it does not appear that such Findings of Fact by the District Court were made after a hearing at which petitioner was permitted to be present and testify.

In these circumstances, as pointed out recently by this court in its opinion and order dated July 6, 1964, and its Findings of Fact, Conclusions of Law and Order dated July 20, 1964, in the case of Jones v. State of Montana, 232 F. Supp. 771, this court is required to hold a hearing on the charges of coerced pleas of guilty and involuntary waiver of counsel by the Supreme Court decisions of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148.

When charges of coerced pleas of guilty and waiver of counsel, such as are involved here, are made, the necessity of holding a hearing either in the State District Court or in this court, and the impossibility of determining the factual issues from the files, records and min-

utes alone, is illustrated by the following language of the Supreme Court in Sanders v. United States, supra, at page 19, 83 S.Ct. at page 1079:

"However regular the proceedings at which he signed a waiver of indictment, declined assistance of counsel, and pleaded guilty might appear from the transcript, it still might be the case that petitioner did not make an intelligent and understanding waiver of his constitutional rights. (Cases cited) For the facts on which petitioner's claim in his second application is predicated are outside the record. This is so even though the judge who passed on the two motions was the same judge who presided at the hearing at which petitioner made the waivers, and the later hearing at which he was sentenced. Whether or not petitioner was under the influence of narcotics would not necessarily have been apparent to the trial judge. Petitioner appeared before him without counsel and but briefly. That the judge may have thought that he acted with intelligence and understanding in responding to the judge's inquiries cannot 'conclusively show,' as the statute requires, that there is no merit in his present claim."

It, therefore, appears that a writ of habeas corpus must issue in this case and a hearing be held on the following issue:

"Whether petitioner's waiver of counsel and pleas of guilty in causes 382, 383 and 384 in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, were understandingly and voluntarily made, or whether such pleas of guilty and waiver of counsel were coerced or induced by threats and/or promises of the County Attorney or other officials of Fallon County, Montana."

Now, therefore, it is ordered and this does order that the Clerk of this Court forthwith issue a Writ of Habeas Corpus directed to Edward C. Ellsworth, Jr., Warden of the Montana State Prison, requiring the production of said Leighton L. Alden before the court on the 10th day of September, 1964, at the hour of 10:00 o'clock A.M., M.S.T., in the courtroom of the United States District Court, in the Post Office building, at Butte, Montana, for a hearing on the issue above set forth.

It is further ordered that Messrs. John C. Hauck and William H. Coldiron be and they hereby are appointed as counsel for said petitioner to represent him at said hearing.

It is further ordered and this does order that the Writ of Habeas Corpus, together with a copy of this Opinion and Order be forthwith served upon Edward C. Ellsworth, Jr., Warden of the Montana State Prison, by the United States Marshal, and that copies of the Writ and this Opinion and Order be served upon the following:

Attorney General of the State of Montana

Messrs. John C. Hauck and William H. Coldiron

Petitioner Leighton L. Alden.

In this connection, the original handwritten petition, filed by the petitioner, is so lengthy and contains numerous exhibits, it is impractical to reproduce the same for service on all of the interested parties. However, the sole issue upon which the hearing is granted is that enumerated above, and contained in Paragraph 9(b) of the petition which is set forth in full above. The original petition is on file in the Clerk's office, however, and available for inspection by any of the interested parties.

It is further ordered and this does order that said petition for Writ of Habeas Corpus is in all other respects denied.

It is further ordered that a return to the Writ may be filed by respondents on or before September 8, 1964.

### On the Merits

Petitioner is seeking release by Writ of Habeas Corpus from the Montana State Prison where he is confined by virtue of his conviction, on his pleas of

guilty, of three separate felonies in a Montana State District Court. The petition contained numerous grounds upon which petitioner alleges he was deprived of his constitutional rights to due process and equal protection of the law. While determining that most of the grounds alleged in the petition were without merit, this court, by its Opinion and Order dated August 27, 1964, authorized petitioner to proceed in forma pauperis, appointed counsel for him, and ordered a hearing on the issue raised by the petition of

"Whether petitioner's waiver of counsel and pleas of guilty in causes 382, 383 and 384 in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, were understandingly and voluntarily made, or whether such pleas of guilty and waiver of counsel were coerced or induced by threats and/or promises of the County Attorney or other officials of Fallon County, Montana."

Such hearing was held September 10, 1964. Petitioner was present and represented by his court-appointed counsel, and the respondents were represented by an Assistant Attorney General and a Special Assistant Attorney General. Evidence, both oral and documentary, was presented, and after considering the evidence and the post-hearing briefs of the parties, the court now makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

I

On September 18, 1962, a complaint was filed in the Justice Court of Fallon County, Montana, charging petitioner with "uttering a fraudulent check, a felony". On September 19, 1962, a second Complaint was filed in the same Justice Court charging petitioner with "Grand Larceny, a felony" ; and on September 26, 1962, a third complaint was filed in the same Justice Court charging petitioner with "uttering a fraudulent check, a felony, and for forgery, a felony,

pleaded in two counts". Warrants were issued on these complaints.

II

Petitioner was subsequently arrested on these charges in the State of South Dakota and consented to extradition to Montana. The exact date of his arrest in South Dakota does not appear in the record, but it was sometime prior to December 29, 1962, because on that date he was returned to Baker, Montana, by the Sheriff of Fallon County, Montana. By virtue of the events which petitioner has alleged transpired in South Dakota subsequent to his arrest and prior to his return to Montana, it is probable that his arrest occurred in South Dakota at least a day or two before his return to Montana. A recital of these events is contained in the decision of the Montana Supreme Court in In re Alden's Petition, 391 P.2d 701, and a copy of the decision is attached to the handwritten petition herein.

III

Petitioner arrived in Baker, Montana, in custody of the Sheriff in the late afternoon of December 29, 1962, and was taken immediately to Justice Court for arraignment and the preliminary examination on the three complaints above referred to that is provided for by Section 94–6101 et seq., R.C.M.1947. The arraignment occurred around 5:30 or 6:00 o'clock in the evening of December 29, 1962. Present at the arraignment were petitioner, the Justice of the Peace, the County Attorney and Sheriff of Fallon County, Montana.

IV

Upon his arraignment in Justice Court petitioner was handed a copy of each of the three complaints and warrants above referred to, and the complaints, and each of them, were read aloud to the petitioner by the Justice of the Peace. After the charges were read to petitioner, the County Attorney, at the request of the Justice of the Peace, informed petitioner of his right to either have or waive a preliminary hearing in the Justice Court on each of the charges. The County At-

torney further advised petitioner of his right to counsel, and that he did not have to say anything but that anything he did say could be used against him in subsequent proceedings. In connection with his right to counsel, the County Attorney informed petitioner that he had the right to be represented by counsel at every stage of the proceedings, and that if he desired time before proceeding with the hearing to consult counsel he would be granted such time. The County Attorney further informed petitioner that there was no means by which court appointed counsel could be provided for him in the Justice Court at that point if he was without means to employ his own counsel, but that when the cases reached District Court, he would be provided with court appointed counsel if he desired counsel, and was without means to employ counsel.

### V

After the complaints were read to petitioner and he was advised of his rights, he examined the checks involved in the fraudulent check counts and admitted that he had executed the checks and admitted that he had the automobile involved in the grand larceny case out of the state. Petitioner thereupon asked the advice of the County Attorney as to whether or not he should ask for a preliminary hearing and should ask for an attorney. The County Attorney informed petitioner that he was in no position to advise petitioner since he was on the other side of the case, but that in making up his mind, the petitioner should be informed of and consider what he, the County Attorney intended to do. He then informed petitioner in effect that petitioner had up to that point been cooperating with the officials in waving an extradition hearing in South Dakota and in admitting the offenses in the Justice Court, and if such cooperation continued when the cases reached the District Court, the County Attorney would not file prior felony charges against petitioner, but that if petitioner pleaded not guilty in the District Court, then the prior felony charges would be filed. He further explained to petitioner that the filing

and proof of prior felony convictions could result in substantially increased sentences in the event petitioner was found guilty of the pending charges. The County Attorney further informed petitioner that he was advising him of his intentions with regard to the prior convictions, not for the purpose of inducing or coercing petitioner to waive any of his rights or plead guilty, but merely for the purpose of enabling petitioner to understand the situation with which he was faced. Thereupon petitioner waived counsel, pled guilty to each offense, and was bound over by the Justice of the Peace to the District Court on each of the charges contained in the Justice Court complaint, and was remanded to the custody of the Sheriff in lieu of bail, which was set at $1000 in two of the cases and $500 in the third case.

### VI

Thereafter, three separate informations charging felonies were filed against petitioner in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon. In Cause No. 382 the charge was uttering a false check on September 16, 1962. Cause No. 383 charged grand larceny by bailee of a 1953 Cadillac on September 18, 1962. In Cause No. 384 the information was in two counts, the first of which charged the uttering of a false check on September 15, 1962, and the second charged forgery on September 14, 1962. Count one of the information in Cause No. 384 was subsequently dismissed on the motion of the County Attorney.

### VII

On January 10, 1963, at about 10:30 in the morning, the petitioner was brought into the District Court for arraignment in Cause No. 382. Prior to arraignment, petitioner was fully advised of his rights to counsel, and was informed that if he desired counsel, but did not have the means to employ counsel, the court would appoint counsel for him. Petitioner waived counsel, and thereupon was arraigned, waived the statutory time

for entry of plea, pled guilty, waived the statutory time for pronouncement of sentence, and received a sentence of three years. He was thereupon returned to the county jail in the custody of the Sheriff.

## VIII

Petitioner was again brought into District Court at about 2:30 on the afternoon of January 10, 1963, for arraignment in Causes 383 and 384. No reason appears in the evidence as to why all three cases were not handled on one appearance in the District Court. In any event, petitioner was again informed of his right to counsel in each of the cases, and the offer was made to appoint counsel if petitioner desired counsel and did not have the means to employ counsel. Again, in each of the cases, petitioner waived counsel and pled guilty to the offenses charged in Causes 383–C and 384–C. It was at this point that Count one in Cause 384–C was dismissed. Petitioner again waived the time for entry of plea, time for the pronouncement of sentence, and in Cause No. 383 received a sentence of seven years, and in Cause 384, a sentence of eight years. The court ordered the sentences in all three cases to run consecutively.

## IX

At the time of the foregoing events, the defendant was 39 years old. He has an eighth grade education. Before September, 1962, he had sustained two prior felony convictions, and was not a stranger to court proceedings in criminal cases. Prior to his arrest in South Dakota petitioner claims to have been on a prolonged drinking spree, as a result of which he claims to have been "fuzzy" when he made his appearance before the Justice of the Peace in Baker on December 29, 1962. There is no evidence, however, that he had access to any intoxicants while he was in custody prior to his appearance in District Court, which would have given him the 11 or 12 days he was in jail in Baker, plus whatever length of time he was in custody in South Dakota, to recover from the effects of his

drinking before his appearance in District Court.

## X

When petitioner was on his way to the District Court on the morning of January 10, 1963, in the custody of the Sheriff, he met the County Attorney briefly outside the courtroom, at which time the County Attorney informed petitioner that because of his drinking, and his conduct while under the influence of liquor, the County Attorney considered him a menace to the community, and would recommend to the court that petitioner be given the maximum sentence on all the charges and that the sentences run consecutively.

## XI

While petitioner pled guilty to each of the charges in the District Court, at the time he entered his pleas, he made statements which indicated that he did not know if he was in fact guilty of the check charges, and may possibly have had a defense to those charges, and also made a statement to the effect that he was not guilty of the grand larceny charge.

## DISCUSSION

Based on the foregoing facts concerning which there is virtually no conflict in the evidence, petitioner contends:

1. That the County Attorney's informing petitioner with reference to his intention to file prior convictions against petitioner if he pled not guilty, as set forth in Finding V above, constituted such coercion and duress as to invalidate petitioner's waiver of counsel and pleas of guilty.

2. That the failure of the State to provide counsel for petitioner at the preliminary examination before the Justice of the Peace was unconstitutional and in violation of petitioner's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

3. That petitioner's statement made in open court at the time he entered his pleas indicated that the guilty

pleas were not understandingly entered.

These three contentions will be considered together because in the circumstances of this case they are so closely related one to the others, that separate consideration of each would be impossible.

 A plea of guilty, if induced by promises or threats which deprive it of the character of a voluntary act, is void. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473. In determining the validity of a plea of guilty the question is whether the behavior of the State law enforcement officials was such as to overbear petitioner's will to resist and bring about guilty pleas not freely self-determined. Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760.[1]

 It is the court's understanding that the practice of prosecuting attorneys of not filing prior convictions under prior offender statutes where the plea to the current charge is guilty, but filing such priors if the plea is not guilty and the case has to be tried, is quite common in Montana and elsewhere.[2] It is debatable whether such practice involves a proper use of the prior offender statute. Undoubtedly the practice may result in many instances in coercing pleas of guilty which would not otherwise be entered. On the other hand, a defendant who would otherwise plead guilty in any event suffers no prejudice in not having his sentence extended by the pleading and proof of prior offenses. Where the practice is followed, fairness would seem to require that a defendant with prior convictions be advised of the practice in order that he could consider it, along with other relevant factors, in determining what his plea should be. However, without either approving or condemning the practice per se generally, the court in this case believes that the combination of the County Attorney informing petitioner, in effect, that his prior convictions would not be filed against him if he pled guilty, but that they would be filed if he pled not guilty, together with the failure of the State to provide the assistance of counsel at the preliminary hearing, resulted in pleas of guilty that cannot stand in the face of the due process requirements of the Fourteenth Amendment.

 With regard to the assistance of counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, makes it clear that the Sixth Amendment guarantee to defendants charged with crime of the assistance of counsel is made applicable to the States by the Fourteenth Amendment. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, make it clear that this right to counsel exists at all stages of the proceedings, and particularly at the preliminary hearing before the magistrate. Both the Hamilton and White cases were capital cases, and in each case the defendant was shown to have suffered prejudice by not being represented by counsel at the preliminary hearing before the magistrate. In the Hamilton case the Supreme Court found that various available technical defenses must be raised at the preliminary hearing under Alabama practice, or be irretrievably lost. In the White case the defendant pled guilty at the preliminary hearing while not represented by counsel, and this plea of guilty was received in evidence against him at his trial when he subsequently pled not guilty and stood trial. However, in setting aside the

---

1. While Rogers v. Richmond was concerned with a confession rather than a guilty plea, what the Supreme Court said there with reference to confessions applies equally to guilty pleas because a conviction on a coerced plea of guilty is no more consistent with due process than a conviction supported by a coerced confession. Bram v. United States, 168 U.S. 532, 543, 18 S.Ct. 183, 42 L.Ed. 568; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302.

2. See Barber v. Gladden—9th Circuit, 1964, 327 F.2d 101.

convictions in both cases, the Supreme Court made it very clear that a showing of prejudice by the absence of counsel at the preliminary hearing was not necessary in order for the absence of counsel to be violative of due process requirements. In the Hamilton case, the court stated, in 368 U.S. 55, 82 S.Ct. 159:

"When one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted. Williams v. Kaiser, 323 U.S. 471, 475–476 [65 S.Ct. 363, 366, 89 L.Ed. 398]; House v. Mayo, 324 U.S. 42, 45–46 [65 S.Ct. 517, 520, 89 L.Ed. 739; Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 442, 69 S.Ct. 184, 186, 93 L.Ed. 127]. In this case, as in those, the degree of prejudice can never be shown. Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently."

In the White case, the court said, 373 U.S. at p. 60, 83 S.Ct. at p. 1051:

"We repeat what we said in Hamilton v. Alabama, supra [368 U.S.] at 55 [82 S.Ct. at 159] that we do not stop to determine whether prejudice resulted."

In a footnote on page 60, 83 S.Ct. on page 1051 in the White case the court stated:

"[T]he rationale of Hamilton v. Alabama, supra, does not rest, as we shall see on a showing of prejudice."

▇▇▇ As pointed out, both the Hamilton and White cases were capital cases, but that does not distinguish them from the present case insofar as the problem here involved is concerned. As Justice Clark stated in his concurring opinion in Gideon v. Wainwright, 372 U.S. 335, at 349, 83 S.Ct. 792, at 799:

"I must conclude here, as in Kinsella, supra [Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268], that the Constitution makes no distinction between capital and non-capital cases. The Fourteenth Amendment requires due process of law for the deprival of 'liberty' just as for the deprival of 'life,' and there cannot constitutionally be a difference in the quality of the process based merely upon a supposed difference in the sanction involved. How can the Fourteenth Amendment tolerate a procedure which it condemns in capital cases on the ground that deprival of liberty may be less onerous than deprival of life—a value judgment not universally accepted—or that only the latter deprival is irrevocable? I can find no acceptable rationalization for such a result, and I therefore concur in the judgment of the Court."

▇▇▇ In this case, however, as in the White and Hamilton cases, prejudice is shown to have resulted from the lack of counsel by the record. In criminal cause No. 382, one of the check charges, the record shows the following colloquy between the court and the petitioner (defendant):

"Defendant: The only statement I have, I don't ever recollect ever writing the check. I was in a drunken stupor when this happened. As far as I can recollect, the only thing I know is when they brought me up here and I seen the check. I know my handwriting. There was no reason why I should have written the check. I had a good job here. All I can say is the alcohol is what got me into this mess.

"Court: You are quite sure you wrote the check?

"Defendant: Well, I assume I did. I am the only one from down in that county, and I did go by Gene Ellis here in Baker."

In the other check case, No. 384 the record shows the following colloquy:

"Court: Were you intoxicated when you wrote these checks?

"Defendant: Yes.

"Court: One is for insufficient funds, Bank of Baker, you didn't have an account there?

"Defendant: No.

"Court: The other one was forging the name of Roy Bentenhouse.

"Defendant: I still can't figure out where I cashed that check.

"Court: Can you enlighten him, Mr. Young (County Attorney)?

"Mr. Young: That was cashed at the Baker Texaco, and the Baker Texaco cashed it at the bank.

"Defendant: Is that the same service station where I had that $20.00 check?

"Mr. Young: Yes.

\* \* \* \* \* \*

"Court: You signed that check? You signed that Gene Ellis, is that correct?

"Defendant: I don't know, sir. I don't remember."

In cause No. 383, the larceny charge, the record shows the following colloquy:

"Defendant: On this matter, Your Honor, the only thing I have to say is that I didn't steal the car. I had possession of the car. I had loaned money on the car, and at this time that I took the car the car had been in my possession for the length of time—The time I had the car is pretty much of a blank, but I assume it was probably a week or maybe more than a week that I had possession of that car before I ever left. It is hazy. I don't really— don't remember the day I left Baker, but I did have access to the car, and I did loan Lee money, and I took possession of the car until he would pay me back.

\* \* \* \* \* \*

"Court: Can you inform the Court on that?

"Mr. Young: I am satisfied that Leighton did have possession of this car illegally (sic), of course, that is why I have charged larceny by bailee. He did have legal possession of the car here, of course, there was no authority that he was going to take it and wonder (sic) around the country with it. We had, as you can see, a couple-three felony warrants out for him from that time until the end of December when he was picked up down in Kenebeck, South Dakota. He had no authority to use the car for that length of time.

"Court: You say he was a bailee. What does that cover?

"Mr. Young: *I don't know how far the authority went.* I am satisfied it does not include any such wondering (sic) around the country."

■■■ While voluntary intoxication is generally no defense to a criminal charge, it may be a defense where a specific intent is an essential element of the crime charged. Sec. 94–119, R.C.M., 1947; State v. Reagin, 64 Mont. 481, 210 P. 86; 15 Am.Jur. "Criminal Law" § 340, p. 30. A specific intent was an essential ingredient of each of the offenses charged against petitioner. It is inconceivable that a lawyer representing petitioner would have permitted him to plead guilty to any of the charges if confronted by petitioner's version of the facts as above shown.

■■■ The State, however, contends that petitioner was offered court appointed counsel in the District Court and expressly waived the appointment of counsel. The record of the District Court proceedings does show that petitioner was on numerous occasions informed of his right to court appointed counsel, and specifically waived such right. However, the waiver of counsel at that stage of the proceedings must necessarily have been influenced by the prior purported waiver of counsel and pleas of guilty without counsel in Justice Court, and by the threat of prior conviction charges hanging over his head.

The purported waiver of counsel by petitioner in Justice Court was no waiver. A waiver is the voluntary relinquishment of a *known* right. As the Supreme Court said in Carnley v. Cochran, 369 U.S. 506, at 516, 82 S.Ct. 884, at 890, 8 L.Ed.2d 70 "The record must show, or there must

be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Here the petitioner was informed that while he had the right to employ counsel to represent him at the preliminary hearing, he was specifically informed that counsel would not and could not be appointed for him in that court. Being unaware of his right to court appointed counsel in Justice Court, as established by the Hamilton and White cases above discussed, petitioner cannot be said to have intelligently and understandingly waived that right.

For the foregoing reasons, the court draws the following

## CONCLUSIONS OF LAW

### I

That petitioner's pleas of guilty in Causes Nos. 382, 383 and 384, in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, were obtained from him in violation of his right to due process of law under the Fourteenth Amendment to the Constitution of the United States.

### II

That petitioner was denied his right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

### III

That petitioner's confinement to the Montana State Prison pursuant to the judgment of conviction in Causes Nos. 382, 383 and 384 in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, is unconstitutional and in violation of the petitioner's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

Therefore, it is ordered and this does order that the petitioner, Leighton L. Alden, be released from the custody of the respondent, E. C. Ellsworth, Jr., Warden of the Montana State Prison, and from confinement in said Montana State Prison unless within 10 days from the date of this order petitioner be permitted to withdraw his pleas of guilty in said Causes Nos. 382, 383 and 384 in the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, and plead anew to the charges in those cases.

It is further ordered and this does order that in the event the respondents appeal this decision, that petitioner be released from confinement pending said appeal upon furnishing bail in the sum of $5,000.00, or such other sum as may be ordered by the District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon.

The court wishes to express its appreciation and thanks to Mr. John C. Hauck and Mr. William H. Coldiron for their excellent performance of their duties as the court appointed counsel for petitioner.