Donald J. **FROST**, Petitioner,

v.

The **STATE OF MONTANA** and **Ed. Ellsworth, Jr.**, Warden, Respondents.

No. 1298.

United States District Court
D. Montana,
Butte Division.

Sept. 3, 1965.

Findings of Fact, Conclusions of Law and Order Jan. 21, 1966.

---

74. Stipulation, p. 1.

75. Def. Brief in Opposition, p. 32.

Frank Burgess and John W. Whelan, Butte, Mont., for petitioner Donald J. Frost.

Donald A. Garrity and James R. Beck, Asst. Attys. Gen. of Montana, Helena, Mont., for respondents.

MURRAY, Senior Judge.

Petitioner, who is confined to the Montana State Prison, for a term of 50 years, under and by virtue of a commitment of the Montana State District Court of Yellowstone County, Montana, dated October 8, 1951, seeks leave to file in forma pauperis a Petition for Writ of Habeas Corpus. He also requests the appointment of counsel.

Leave to file said petition without the pre-payment of costs is granted.

Jurisdiction of this matter is conferred on this court by Title 28 U.S.C.A. § 2241.

The petition is handwritten and too long for it to be practical to copy in full. The original is on file in the Clerk's office for inspection by interested parties. However, it does contain the following allegations which are relevant here.

"Your petitioner was arrested or apprehended in Laurel Montana, on date of August 6, 1951. (There was no warrent shown or read at that time). He was then taken to Billings (county jail) where he, your petitioner laid until August 8, 1951, when he was taken to Yellowstone District Court. Judge Derry presiding, During the proceeding that followed, your petitioner (mentally ill and incompetent) was purported to have waived counsel and other rights. If this was done it was certainly done without understanding of the serious charge or the seriousness of the consequences to follow. Your petitioner has only an eight (8) grade education was totally without experience in courts of any kind and was suffering from mental troubles as a result of world war II (2) experiences, was totally upset by all that had happened and should of been aided with counsel immediately after arrest. Instead he laid in jail without proper commitment, with out friends family or counsel, Realizing his illness and in fear, yoar petitioner desired to call a Brother for help from Minnesota. But was denied in this feeble attempt to secure aid. Instead he was taken on the second day (2) August 7, 1951 after arrest to the office of the County Attorney, where from about nine (9) A.M. until four (4) P.M. he was in-

terrogated until a confession or statement was extracted which he had to sign, for relief from pressure upon him. Then he was taken back to jail, and the next day August 8, 1951, taken before Judge Derry of District Court, where the aforementioned court procedure took place. He was then compelled to lay in county jail for about sixty (60) days, until brought before Judge Derry again, when he received a sentence of fifty (50) years."

The foregoing allegations charge violations of petitioner's rights under the United States Constitution as follows:

■ 1. That he was incompetent to waive counsel at the time he appeared in the District Court, which, if proved, would be a denial of his right to counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 and Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70.

■ 2. That his plea of guilty was coerced and not made with a full understanding of the consequences, which, if proved, would be a violation of his right to due process of law under the Fourteenth Amendment. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859; and Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009.

From the petition and the attached documents it further appears that petitioner has exhausted his state court remedies as required by 28 U.S.C.A. § 2254.

Attached to the present petition is a copy of a petition which petitioner presented to the Montana Supreme Court and which was denied by the court. In re Frost Petition, Mont., 403 P.2d 612. In his petition to the Montana Supreme Court, petitioner alleged, among other things

"Your petitioner Donald J. Frost alleges that he is confined and imprisoned in the State of Montana Prison in violation of several constitutional guarantees of due process of law, equal protection and equal benefits of the law, because the State of Montana did not protect this petitioner in trial court procedure, because said State of Montana violated the sixth and fourteenth and fifth amendments to the constitution of the United States by not providing the assistance of counsel for defense, see amendment six of the U. S. Constitution and Gideon vs. Wainwright, U. S. Supreme Court. Counsel can only be waived by one competent and able to comprehend all phases and consequences of such waiver must be in writing and signed by defendant. Johnson v. Zerbat, U.S.Sup.Ct. [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] equal protection and due process of law, U.S.C. Amendment 5 and 6 and 14.

"Your petitioner alleges he was a mentally ill veteran of World War II and could not and did not comprehend any of the procedure used to get him to prison in trial court at Billings, Montana."

■ From the opinion of the Montana Supreme Court, it seems apparent that no hearing on these allegations was granted petitioner, the Court merely stating: "Since the records disclose that petitioner waived the right of counsel his first contention is not well-taken." This is really no answer to the petitioner's contention that he was mentally incompetent to waive counsel, and no mention is made in the Supreme Court decision of petitioner's claim that he was "a mentally ill veteran of World War II and could not and did not comprehend any of the procedure used to get him to prison in the trial court at Billings, Montana". Under these circumstances, the cases of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 and Sanders v. United States, 373 U.S. 1, 83 S.Ct.

1068, 10 L.Ed.2d 148, make it clear that this court must grant a hearing on the claimed violations, inasmuch as no state court has, after a full evidentiary hearing, reliably found the relevant facts against the petitioner's contention. See Jones v. State of Montana, 232 F.Supp. 771, D.C.Mont.1964.

It therefore appears that a writ of habeas corpus must issue in this case and that a hearing be held on the following issues:

1. Whether petitioner competently and intelligently waived counsel at the time of his appearance in the District Court.

2. Whether his plea of guilty was coerced or made with a full understanding of the consequences of his plea.

Now, therefore, it is ordered and this does order that the Clerk of this court forthwith issue a writ of habeas corpus, directed to Edward C. Ellsworth, Jr., Warden of the Montana State Prison, requiring the production of petitioner Donald J. Frost before the court on the 21st day of September, 1965, at the hour of 10:00 o'clock A.M., in the courtroom of the United States District Court in the Federal building, at Butte, Montana, for hearing on the issues above set forth.

It is further ordered that Mr. Frank Burgess of Butte, Montana, be and he hereby is appointed as counsel for petitioner to represent him at said hearing.

It is further ordered that a return to the writ may be filed by respondents on or before September 17, 1965.

It is further ordered that the writ of habeas corpus, together with a copy of this opinion and order be forthwith served upon Edward C. Ellsworth, Jr., Warden of the Montana State Prison, by the United States Marshal and that copies of the writ and this opinion and order shall be served by mail upon the following:

The Attorney General of the State of Montana

Mr. Frank Burgess, Attorney at Law, Butte, Montana

Petitioner, Donald J. Frost.

## ON FINAL HEARING

By order dated September 3, 1965, the court permitted petitioner to file in forma pauperis his petition for writ of habeas corpus seeking his release from Montana State Prison. In the same order the court appointed counsel to represent the petitioner and ordered a hearing for September 21, 1965, on the following issues raised by the petitioner:

1. Whether petitioner competently and intelligently waived counsel at the time of his appearance in the State District Court of Yellowstone County, Montana, which resulted in his being sentenced to a term of 50 years on his conviction upon his plea of guilty to the offence of infamous crime against nature; and

2. Whether his plea of guilty was coerced or made with a full understanding of the consequences of the plea of guilty.

Thereafter, at the request of the petitioner, the hearing was continued until December 10, 1965, in order to permit the attendance and testimony at the hearing of a doctor who had examined petitioner shortly after he entered his plea of guilty in the state court.

The hearing was had on December 21, 1965, at which petitioner was personally present and represented by his court appointed counsel, and the respondents were represented by an Assistant Attorney General of the State of Montana. Oral and documentary evidence was presented at the hearing on behalf of petitioner and respondents, and the matter was taken under advisement.

■ Before considering the evidence, a few observations concerning the principles of law governing this and similar habeas corpus proceedings are appropriate. In the first place, there is a rebutable presumption that official duty has been regularly performed, and that a judicial record, when not conclusive, does still correctly determine or set forth the rights of the parties. 93–1301–7(15) (17) R.C.M., 1947. Furthermore, a con-

viction after a public trial in a state court by verdict or plea of guilty carries with it a strong presumption of constitutional regularity in the state judicial proceedings. Lyle v. Eidson, 8 Cir., 182 F.2d 344; Miller v. Crouse, 10 Cir., 346 F.2d 301; Schlette v. People of State of California, 9 Cir., 284 F.2d 827. The burden of overcoming this presumption and establishing that his conviction was obtained in violation of his constitutional rights rests upon the petitioner. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Schlette v. People of State of California, supra. And, as stated by the Court of Appeals for the District of Columbia Circuit in Pasley v. Overholser, 108 U.S.App.D.C. 332, 282 F.2d 494 at 495, "While lapse of time alone may not warrant denial of the issuance of the writ, it is certainly true that one who attacks the validity of his plea of guilty so long after the proceedings in the District Court must carry a heavy burden if he is to overcome the regularity of his conviction."

■ Considering the evidence with the foregoing principles in mind, the court finds and concludes that the petitioner has failed to meet his burden of overcoming the presumption of the constitutional regularity of the proceedings in the state court which resulted in his conviction and sentence, and has failed to prove by a preponderance of the evidence that he did not competently and intelligently waive counsel, and that his plea of guilty was coerced and not made with a full understanding of the nature of the charge and the consequences of a plea of guilty.

The record in this case is far from satisfactory. The offense and events surrounding petitioner's conviction and sentencing occurred in 1951, and the present proceeding was not brought until 1965, some 14 years later. In the meantime, Yellowstone County, Montana, had built a new courthouse, and in the move to the new courthouse, records and files of the County Attorney's office were misplaced or lost. It does not appear from the evidence whether the proceedings in the State District Court where petitioner entered his plea and was sentenced were reported by a court reporter or not. In any event, no transcript of such proceedings was produced, and apparently none is available. These misfortunes are certainly not the responsibility of petitioner. On the other hand, the lapse of some 14 years between the conviction of the petitioner and the commencement of this present proceeding is the petitioner's responsibility. In this regard, in connection with his claim that he did not understand the nature of the charge when he pleaded guilty, petitioner testified that he did come to an understanding of the nature of the offense within a few months after his arrival at the penitentiary, yet he chose to wait 14 years before questioning the legality of his conviction. Understandably the memories of those involved have grown dim in that period of time. The county attorney who handled the case on behalf of the state was unable to recall the case specifically, but was only able to testify as to the general practice that prevailed at the time in handling such matters and offer his recollection that the practice was followed in petitioner's case. Likewise, the memory of the physician psychiatrist who had examined petitioner around the time he entered his plea had dimmed with the passage of time; some of his records had also been lost or stolen, and his testimony concerning petitioner's mental competency was unconvincing to the court.

The evidence does show that petitioner was arrested on the charge on August 6, 1951. On August 8th, 1951, upon leave of court first had and obtained, an information charging the infamous crime against nature was filed, and on the same day the defendant waived counsel and entered his plea of guilty. Petitioner offered testimony that a confession of the offense was obtained from him by coercion during the time between his arrest and appearance in court. However, since he was convicted on his plea of guilty, no confession was introduced against him. In any event, his testimony in support of the claim of coercion was

so vague and equivocal that it would not support a finding of coercion. Petitioner's claim that he was not informed of the nature of the charge and of his right to counsel at the time he entered his plea is contradicted by the statement in the minutes of the court that "Defendant states that his true name is as given in the information and he is duly arraigned. The information is read to him, and a copy is handed to him. Defendant then waives the right of counsel, and time to plea, and now pleads that he is guilty of the offense as charged in the Information." The county attorney present at the time testified he had no memory of the specific case, but he also testified that it was the practice of the court to inform defendants of the nature of the charge and of their right to counsel, and that he had no reason to believe the practice was not followed in that case.

After petitioner entered his plea of guilty to the offense of infamous crime against nature on August 8, 1951, the time for imposition of sentence was set for August 22, 1951, and petitioner was returned to jail. While in jail he was questioned concerning the death of a boy which had occurred in Yellowstone County and he signed what apparently amounted to a confession of first degree murder. Again he claimed the confession was coerced, but again his testimony concerning the circumstances surrounding the confession was so vague and indefinite that it would not support a finding of coercion. A charge of first degree murder was filed against petitioner on August 10, 1951, in the same court in which he had pleaded guilty to the infamous crime against nature, but before a different judge, and counsel was immediately appointed to represent him. It was in connection with this charge that petitioner was examined by the physician psychiatrist who testified in his behalf at the present hearing. Subsequently the murder charge was dismissed on the motion of the County Attorney on the ground that subsequent investigation had revealed that the death of the victim was accidental, and that such in-vestigation "throws considerable doubt, if not conclusive doubt, upon the confession as given by the defendant (petitioner)". The murder charge was dismissed September 26, 1951, and petitioner was sentenced on the infamous crime against nature charge on October 8, 1951.

Petitioner's claim that he was not informed of the nature of the charge against him is also contradicted by a recital in the written judgment that was filed in the case that "the defendant was duly informed by the Court of the nature of the information found against him."

Counsel for petitioner strongly urges that the fact that petitioner signed two confessions, one to an infamous crime against nature and one to murder, within a period of three or four days, and that the confession to murder was subsequently found to be untrue, demonstrates that both confessions were coerced and that petitioner's will was overborne and that he was not competent to waive counsel and plead guilty to the offense of an infamous crime against nature. The circumstances of the two confessions, one false, probably might support the inference for which counsel for petitioner contends. On the other hand, this evidence might also establish that within two days after he entered his plea, petitioner certainly knew of his right to counsel because he requested counsel and counsel were appointed to represent him on the second charge. Thus, from August 10, 1951, until the murder charge was dismissed on September 26, 1951, petitioner was represented by counsel. It is inconceivable that such counsel would have been unaware of petitioner's prior plea of guilty to the infamous crime against nature, and it is extremely unlikely that such counsel, if they had any doubts concerning petitioner's competency, would not have sought leave to withdraw the plea, or at least brought the matter to the court's attention, even though they were not appointed in the particular case. No motion to withdraw the plea was ever filed. Also, of some significance, is the fact that the confession to the infamous crime

against nature was followed by a plea of guilty in open court, while the false confession was not followed by such a plea. And the court regards as highly significant the fact that the plea of guilty was allowed to stand unchallenged by the petitioner for some 14 years.

Decision of this matter has not been simple. As noted before, the record is not entirely satisfactory. Decision that the petition must be denied results from the strong presumption of constitutional regularity which surrounds the state court proceedings and what the court finds to be petitioner's failure to meet the burden of proof which the law imposes on him.

Therefore, it is ordered and this does order that the petition for writ of habeas corpus be and the same hereby is denied, and petitioner is remanded to the custody of the Warden of the Montana State Prison at Deer Lodge, Montana.

The court desires to express its appreciation and to highly commend Mr. Frank Burgess of the bar of this court for his efforts on behalf of the petitioner and assistance to the court, all without any compensation whatever, in this matter.