Commonwealth *v.* Roberts, Appellant.

Argued October 6, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Louis Lipschitz,* with him *William J. Woolston* and *McBride, Lipschitz, Woolston, Berger & Bohlen,* for appellant.

*Charles C. Gordon,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY DITHRICH, J., November 12, 1947:

The appellant defendant was charged in one indictment with burglary and in seven indictments with armed robbery. The seven indictments for robbery were based on three separate offenses, one alleged to have been committed January 29, 1947, and two February 10, 1947. He was found guilty as indicted and was sentenced on two of the indictments. Sentence was suspended on the others, but for the sake of the record he has taken an appeal on each separate bill. Being a parolee, each offense would be considered a parole violation even though sentence had been suspended.

The assignments of error on each of the eight appeals are practically identical. The first assignment is to the overruling of appellant's objection to the consolidation for trial of the offenses allegedly committed October 13, 1946, (Bill No. 306, Appeal No. 169), January 29, 1947, (Bill No. 277, Appeal No. 162) and February 10, 1947, (Bill No. 289, Appeal No. 164). It was on these last two bills that sentence of imprisonment was imposed.

His co-defendants on each of the charges were the same; they were all together in a taxicab the night of February 10 when they were placed under arrest; and there was other evidence implicating appellant in the commission of the crimes to which his co-defendants entered pleas of guilty. Appellant was the only one who stood trial.

The first of the indictments consolidated for trial charged the burglary of a gunsmith's shop on October 13, 1946; the second, the robbery of three men at a used car establishment on January 29, 1947; and the third and fourth, the robberies of four men in a taproom and a lunch wagon on February 10, 1947. When the four defendants were arrested one of the revolvers found in their possession was identified by the gunsmith as one of those stolen from his repair shop. The position of the Commonwealth was that the commission of the several offenses constituted "one continuous course of conduct."

In *Commonwealth v. Mulroy*, 154 Pa. Superior Ct. 410, 36 A. 2d 337, this court speaking through President Judge KELLER said (pp. 412-413):

"We have had occasion to consider the consolidation of several indictments for trial in a number of recent cases and have ruled that it is largely a matter within the sound discretion of the trial court, and where the indictments are closely related, his exercise of discretion will not be reversed unless it is clearly shown that the appellant defendant has been prejudiced or injured thereby."

See also *Commonwealth v. Festa*, 156 Pa. Superior Ct. 329, 40 A. 2d 112.

After a careful review of the entire record in these eight appeals, we are not persuaded that the learned court below abused its discretion in permitting the consolidation of the charges for trial, or that defendant was prejudiced or injured thereby.

The second assignment is to the refusal of defendant's motion for the withdrawal of a juror. The motion was made after county detective sergeant Frederick B. Tagg, a veteran officer in charge of the investigation, stated on direct examination: "We got the defendants all together and we had reports of the holdups that occurred throughout the City of Philadelphia, *and they answered the description of them.*" (Emphasis added.) Precisely what the witness meant by the latter part of his answer is difficult to comprehend. The learned trial judge in his opinion refusing the motion for a new trial says the statement was "obviously ambiguous." We agree with that statement, but the vice of the situation as we view it is that the trial judge did not instruct the jury to disregard it, nor did he attempt to explain away the obvious ambiguity. Had he done either, we would be disposed to overrule the assignment of error, but we are confronted with a situation where a veteran police officer, who, by reason of his long service, if for no other reason, would be an imposing witness, making an entirely uncalled for statement characterized by the trial judge as "obviously ambiguous" and the latter doing absolutely nothing about it except to comment: "The defendant was there, wasn't he? A. Yes, the defendant was there. The whole four of them."

The trial judge elaborates in his opinion that: "The meaning of the detective's statement, to which objection was taken, was thus apparent, that is, 'they (defendants) answered the description of them (answered the questions asked them concerning the holdups described by

the detectives and identified those in which they respectively participated)'. No inference could be drawn from the testimony of the detective that Roberts was implicated in any crimes other than those for which he was on trial or that he had been identified as one of the men who were involved in other holdups."

We are not so sure about that; in fact we have very grave doubt about it. What reasonable inference could be drawn by the jury from the unexplained statement other than that the defendant had been involved in other "holdups that occurred *throughout* the City of Philadelphia" (emphasis added), since "they (defendants) answered the description of them"? That indeed is the view taken of it by the assistant district attorney who tried the case for the Commonwealth. In the counterstatement of the questions involved the Commonwealth asks, "Should a juror be withdrawn on motion of defendant where a Commonwealth witness testified that *the defendant answered the physical description of a person who had participated in hold-ups throughout the city of Philadelphia.*" (Emphasis added.) If the able and experienced assistant district attorney in charge of the prosecution got that impression from the statement of the witness, is it not altogether likely that the jury would be similarly impressed?

Regardless of what was meant by that statement, we cannot escape the conviction that it must have had a very decided tendency to prejudice or mislead the jury, to the great injustice of the defendant, for there was not a scintilla of evidence other than the aforesaid clearly inadmissible statement to implicate him in any way with the commission of any holdups other than those for which he had been indicted and for which he was on trial. The police investigation disclosed that 23 robberies or holdups had been committed. Defendant was charged with only three of them.

Nor is this the type of case where the evidence of defendant's guilt is so overwhelming, as in *Common-*

*wealth v. Fugmann,* 330 Pa. 4, 198 A. 99, and *Commonwealth v. Petrillo,* 341 Pa. 209, 19 A. 2d 288, that the admission of the clearly inadmissible evidence can be said to be not prejudicial and therefore harmless error. We are not passing on the sufficiency of the evidence against the defendant, for that question has not been raised, but we consider it pertinent to observe that the only direct and positive evidence against him was a statement made by one of his co-defendants in his presence and signed by him, and his alleged admission that one of the revolvers identified by the gunsmith as having been stolen from his repair shop belonged to him, and the fact that he was in a taxicab with the other defendants when they were all placed under arrest. The driver of the taxicab, a Commonwealth witness, testified that Roberts was alone when he entered the cab at a point near his home at a quarter to nine on the evening of February 10, and that he directed him to go to the building at 2400 North Mutter Street where they picked up McCloud and the two Dempseys. Around the corner from where the three joined appellant, the taxicab stopped at a tobacco store where one of the passengers made a purchase. It was there that the defendants were placed under arrest. There is no evidence other than the statement or confession that defendant was with the other defendants when they committed the two robberies earlier in the evening.

At the trial defendant disavowed the statement and called Dr. Ralph H. Spangler, a physician at the Philadelphia County Prison, to corroborate his testimony that he was beaten into signing it. Dr. Spangler testified that on admission to the prison "He had contusions and complained of some myalgic muscle pains of both shoulders and there was contusion and edema or swelling of both sides and some abrasions on the left leg, and there was contusion and superficial laceration of the left forearm." On the following day the doctor's associate found that "His right eye had become discolored and was swollen. His right wrist was swollen."

In the light of that testimony, we are at a loss to account for the trial judge's statement that "Except for defendant's own testimony, there was no evidence that he had suffered any physical abuse until after he had joined in making and signing the statement or confession." Conceivably, the injuries for which the defendant was treated upon his admission to the county prison may have been received "at the hands of one or more of the other defendants" as suggested by the trial judge, but that is highly improbable in view of the fact that the defendants were confined in separate police stations until after the police officers had completed their investigation.

We agree with the learned trial judge "that defendant's evidence on the subject was not so clear or convincing as to warrant the exclusion of the confession from the jury." But we feel that it is evidence that should not lightly be brushed aside in passing on the motion for a new trial in the peculiar circumstances of this case.

Louis McCloud, who made the statement which was signed by the other defendants, when called as a Commonwealth witness, testified on direct examination that the appellant defendant was not with him and the other defendants in the commission of the robberies on January 29 and February 10, and one of the other defendants likewise on direct examination testified that appellant did not take part in either of the robberies on February 10, nor was he identified by any of the victims of the holdups. Following the appellant defendant's trial, when testimony was being taken on the pleas of guilty of the other defendants, they again exonerated the appellant.

In the light of all the evidence, can it then be fairly and reasonably asserted that it was harmless error to refuse the motion to withdraw a juror and not even instruct the jury to disregard the statement of the detective sergeant? In *Commonwealth v. Blose*, 160 Pa. Su-

perior Ct. 165, 50 A. 2d 742, where a remark by a police officer characterized defendant's picture as a "penitentiary photograph" the trial judge, while refusing defendant's motion to withdraw a juror, immediately instructed the jury to disregard the statement and reiterated the instruction in his charge. Notwithstanding the earnest effort on the part of the trial judge to correct the harm that had been done, we held that it was reversible error to refuse the motion to withdraw a juror. In that case we said, speaking through Judge Reno (p. 168), "that if the situation was curable by admonition, the instructions were adequate for that purpose." But here not even that can be said, for the trial judge, as we have previously pointed out, neither at the time it was made nor later in the charge admonished the jury to disregard what he subsequently termed an "obviously ambiguous" statement.

No hard and fast rule can be followed in passing upon the question of what constitutes harmless error, a question that is so frequently before the appellate courts, but as we said in *Commonwealth v. Blose,* supra (p. 170):

"The best approach to a rule we have found is the recent pronouncement by Mr. Justice Rutledge in Kotteakos v. United States, 328 U. S. 750 [764-765], 66 S. Ct. 1239, 1248. After analyzing the Act of Congress (28 U. S. C. A. § 391), relating to harmless error, he said: 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by

the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' "

In this case we feel that it cannot be said with fair assurance that the verdict of the jury was not substantially swayed by the error in allowing the testimony to remain in the record without any instruction to the jury in regard to it.

The second assignment of error as to each bill of indictment is sustained; the other assignments are overruled. The judgment and sentence at Nos. 277 and 289 April Sessions, 1947, are reversed and a new trial is awarded.