**UNITED STATES of America ex rel. Louis McCLOUD**

**v.**

**A. T. RUNDLE.**

**Misc. No. 3263.**

United States District Court · E. D. Pennsylvania.

Aug. 8, 1967.

Jay Meyers, Philadelphia, Pa., for relator.

Michael J. Rotko, Asst. Dist. Atty. of Philadelphia County, for respondent.

## OPINION AND ORDER

BODY, District Judge.

Relator pleaded guilty on May 1, 1947 in the Court of Quarter Sessions of Philadelphia County, Pennsylvania, to two indictments charging armed robbery. He was represented by a public defender at the time he entered these pleas. The court sentenced relator to a total term of not less than fifteen nor more than thirty-five years. Relator was released on parole from Graterford Penitentiary on May 26, 1960 but was returned to custody as a parole violator on September 18, 1961, with a detainer lodged against him by the authorities in Bucks County, Pennsylvania.

Relator did not appeal from his original sentence. During June Term 1965 he filed a petition for a writ of habeas corpus with the Court of Common Pleas No. 3, Philadelphia, Pennsylvania. On July 14, 1965 the Honorable Alexander F. Barbieri dismissed the petition, which decision was affirmed by the Pennsylvania Superior Court. Commonwealth ex rel. McCloud v. Rundle, 207 Pa.Super. 735, 216 A.2d 103 (1966). The Supreme Court of Pennsylvania subsequently denied him leave to appeal.

Having exhausted his available state remedies, relator filed the present petition for a writ of habeas corpus. After two hearings before this Court the parties were liberally afforded every opportunity to file briefs and to otherwise complete the record.

Although relator has raised numerous grounds in support of his petition, the Court deems it necessary to consider only one contention—that his pleas of guilty were involuntarily induced by a fear that his allegedly coerced confession would be used against him at his trial.

The United States Court of Appeals for the Third Circuit recently re-emphasized the approach which a district court must take when reviewing a state prissoner's claim that his plea of guilty and the confession which preceded it were coerced and his conviction therefore obtained in violation of the Due Process Clause of the Fourteenth Amendment. In United States ex rel. Collins v. Maroney, 382 F.2d 547 (3rd Cir. 1967), the Court stated in a *Per Curiam* Opinion:

"The issue has four facets. First, it must be decided whether by the plea of guilty, [relator] waived his right to question the constitutional infirmity of his confession. This question is

controlled by federal law. Second, if it is found that [relator] did not waive his right to challenge his confession it will be necessary to determine whether the confession was coerced. Third, if the confession is found to have been coerced it will have to be determined whether the coerced confession induced and thus tainted [relator's] guilty plea. Fourth, assuming that a coerced confession did not induce the plea of guilty, it must be decided whether the plea of guilty was voluntary. If the plea is found to have been voluntary, the conviction may stand."

■ With regard to the first facet, it should be noted that the Commonwealth does not contend that relator waived his right to *challenge* the constitutional infirmity of his confession. It is the position of the Commonwealth, as will be discussed infra, that both his confession and later pleas were purely voluntary as disclosed by the full record. The District Attorney has relied upon the well-accepted doctrine that if relator's guilty pleas were voluntary then his conviction rests upon that plea and all non-jurisdictional defects are waived. United States v. Ptomey, 366 F.2d 759 (3rd Cir. 1966); United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3rd Cir. 1965).

In deciding the second facet of this four-pronged issue—that is, whether the confession was, in fact, coerced—we turn to the accepted criteria for determining voluntariness. Although the Supreme Court in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) clearly stated that the principles enunciated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) do not apply retroactively and are not therefore the guidelines which a district court must follow in judging a confession and plea of 1947, the Court pointed out that prisoners tried before *Escobedo* and *Miranda* may still invoke the traditional case law on coerced confessions and therefore rely upon the Court's substantive test of voluntariness. *Johnson,* supra, 384 U.S. at 730, 86 S.Ct. 1772.

■ That substantive test of voluntariness was enunciated by the Supreme Court in Haynes v. State of Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963) as follows:

"" * * * a confession obtained by the police through the use of threats is violative of due process and * * 'the question in each case is whether the defendant's will was overborne at the time he confessed' * * * 'In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort' * * * And, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all the attendant circumstances."

The above test laid down by the Court in *Haynes* reaffirms the right of the district court to make a broad inquiry into the "totality of the circumstances" which surrounded relator's confession and subsequent pleas. Blackburn v. State of Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Fikes v. State of Alabama, 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957).

At his two federal habeas corpus hearings relator offered the following evidence on the voluntariness issue. Mr. McCloud testified that he was arrested along with several other men on or about February 10, 1947 in Philadelphia, Pennsylvania, as suspects in a wave of recent robberies. At the time of his arrest relator was nineteen years of age, immature and of very lowgrade mentality. The men were taken in police cars to the 4th and York Street police station and questioned separately about recent holdups in the northeast section of the city. Relator denied knowledge of these alleged crimes but was taken into custody about eleven o'clock that evening. At three o'clock the following morning he was taken to the Trenton and Dau-

phin Avenue police station where he was questioned by relays of detectives for hours without interruption. He testified that he was beaten about the head, hands and legs with fists, rubber hoses and blackjacks and was once kicked in the testicles. Finally, in order to avoid further interrogation and beatings, he signed a statement which the officers had prepared for him.

He further testified that even after signing the confession of guilt, the officers threatened "to get him" if he failed to plead guilty. At no time during this long ordeal did the police advise him of his constitutional rights. The first preliminary hearing was held on February 15, 1947. It was continued until February 18, 1947. No counsel appeared on his behalf at either preliminary hearing. The only direct contact relator had with an attorney was at his trial on April 26, 1947 at which time his court-appointed counsel appeared.

Petitioner also alleges that his pleas of guilty were induced by deception or trickery for the detectives had told him that if he pleaded guilty he would be shown mercy.

Relator's contention that he had been beaten and bruised was corroborated to some extent by Louis Lipschitz, Esquire, who represented William Roberts, one of relator's codefendants.[1] Mr. Lipschitz testified that he first interviewed Mr. Roberts at the 8th and Jefferson police station in Philadelphia a few days after the arrest. As he entered the office on the second floor, where the defendants were being detained, he noticed a section of rubber hose measuring approximately 18 inches in length and from 1 to ½ inches in diameter. He saw Mr. Mc-Cloud on February 18, 1947 at the hearing before Magistrate Jules Fuerstein, at which time he noticed bruises on the faces of all the defendants. The bruises appeared to have been of very recent origin and indicated to Mr. Lipschitz that some force had been applied to their

faces. When pressed for more specific details regarding the nature of these bruises, he stated that to his best recollection all defendants had some discoloration around their eyes as well as puffed lips. Mr. Lipschitz recalled objecting vociferously at that time on behalf of his client Roberts.

On cross-examination Mr. Lipschitz was asked very few questions. He admitted that he did not actually see the police inflict beatings on any of the defendants.

The Commonwealth did not present any rebuttal testimony with regard to the facts surrounding the confession and pleas because the police officers who allegedly abused relator were either deceased or otherwise unavailable. Relator himself recalled by name only one officer, now deceased, and was vague when pressed for other specific names. Likewise, relator's court-appointed trial counsel had no independent recollection of the case and did not personally appear at the habeas corpus hearings before this Court.

■ This type of case presents a very perplexing problem. We have before us a state prisoner who has waited approximately eighteen years to bring these matters to a court's attention because he claims that he only recently became aware of his rights. Such a petitioner carries a heavy burden of proving the truth of his allegations after having remained silent for so long. Pasley v. Overholser, 108 U.S.App.D.C. 332, 282 F.2d 494 (1960); Frost v. State of Montana, 249 F.Supp. 349 (D.Mont.1966).

Were it not for the testimony of Louis Lipschitz, Esquire, the Court would be inclined to discount entirely relator's story concerning the alleged beatings and other coercive measures supposedly employed by the interrogating officers. Mr. Lipschitz's recollection of the facts, however, raises certain questions with regard to police conduct which unfortunately cannot be answered due to the unavailability of the alleged participants.

---

1. Roberts was granted a new trial [Commonwealth v. Roberts, 161 Pa.Super. 548, 55 A.2d 577 (1947)] and eventually won an acquittal.

On the other hand, the Commonwealth accurately points out various inconsistencies between relator's testimony at his federal habeas corpus hearing and the state court records which cast further doubt on his serious accusations of police brutality.

. For example, relator did not tell the doctor at the prison who examined him at the beginning of his pre-trial detention that he had been beaten. Later at a hospital near the 8th and Jefferson police station prior to his final preliminary hearing, he failed to mention the alleged beatings and would not allow the doctor to examine him supposedly because the physician was a woman.

Second, relator testified that he was held incommunicado and was prevented from calling either his family or an attorney. He admitted that Roberts persuaded a police officer to notify Mr. Lipschitz. We see no reason why relator, if he had desired, could not have asked for and received the same consideration.

Third, relator claims that the police restrained the defendants from showing their bruises at the first preliminary hearing. However, Mr. Lipschitz testified that they were in no way restrained at that time.

Fourth, relator testified that he pleaded guilty before the magistrate and later stated that he did not know if he had pleaded guilty at the magistrate's hearing.

Finally, relator advised this Court that he would obtain the presence of certain witnesses who could testify concerning the alleged beatings. No such witnesses were produced.

■ In view of the many inconsistencies alluded to above, as well as several gaps left open in the record which can never be filled in, it is impossible for this Court to state categorically whether relator's confession was, in fact, involuntarily induced by the police. We are of the opinion that relator has not sustained his burden of proof with respect to that issue.

Even if we assume, arguendo, the existence of a coerced confession, relator would not be entitled to a writ since we have concluded under the *Collins* guidelines, supra, that the said coerced confession did not taint or induce relator's subsequent guilty pleas.

■■ The mere existence of an involuntary confession is not sufficient to invalidate a guilty plea. A guilty plea, knowingly and voluntarily entered, constitutes an admission of guilt and is a waiver of all non-jurisdictional defects and defenses. United States v. Ptomey, 366 F.2d 759 (3rd Cir. 1966); United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3rd Cir. 1965).

■ To be entitled to a writ relator must establish that the coerced confession played a substantial role in motivating or inducing the subsequent plea of guilty. United States v. Morin, 265 F.2d 241 (3rd Cir. 1959); Gilmore v. People of State of California, 364 F.2d 916 (9th Cir. 1966); Brown v. Turner, 257 F.Supp. 734, 738 (E.D.N.C.1966).

■ As the Court of Appeals for the Fifth Circuit recently pointed out in Busby v. Holman, 356 F.2d 75, 77–78 (5th Cir. 1966):

" * * * It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. * * * Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made."

■ The District Attorney accurately points out that the entire record in the instant case belies relator's asser-

tions that his real reason for pleading guilty was the fear that his coerced confession would be used as evidence against him at his trial. First of all, relator testified at the trial of his co-defendant Roberts, wherein he exonerated Roberts and implicated himself and two others, which indicates that he knew the difference between a plea of guilty and not guilty. Relator also admitted his guilt from the witness stand at his own trial.

The record also indicates that relator had consulted his court-appointed counsel prior to entering his pleas. During the discussions the tactical decision was made to plead guilty with the hope of obtaining leniency. At various times during his federal habeas corpus hearing, relator testified that he decided to "take the rap" for certain co-defendants who had long records because he hoped to get a light sentence. Finally, the record indicates that relator knew the difference between a plea of guilty and not guilty. He had admitted his guilt only a few days earlier at Robert's trial.

Having reviewed the evidence in its entirety, we have reached the conclusion that relator's confession, if in fact coerced, did not taint or induce his guilty plea. In short, relator entered his plea knowingly and voluntarily with the expectation of a lighter sentence and was disappointed with a 15 to 35 year sentence.

Relator apparently feels he has already served enough time in prison for the commission of these crimes although he admits that he erred greatly in committing another robbery in Bucks County, Pennsylvania, while on parole from Graterford Penitentiary, for which he was returned to prison as a parole violator. Although this Court is sympathetic to relator in that he appears to have mended his ways in many respects, it is not our province to grant him relief in the nature of parole. Any application for a second parole must be made by relator to the State Board of Parole.

In conclusion we note that our disposition of the voluntariness issue makes it unnecessary to decide several other ques-tions which relator has raised in his present petition and which he had previously submitted to the state courts.

The Court expresses its gratitude to Jay Meyers, Esquire, for his unselfish, able and assiduous service on relator's behalf, all of which was performed without compensation.

### ORDER

And now, this eighth day of August, 1967, it is ordered that the petition of Louis McCloud for a writ of habeas corpus be and the same is denied.