**UNITED STATES of America ex rel. Louis McCLOUD, Appellant,**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania.**

**No. 16967.**

United States Court of Appeals Third Circuit.

Argued March 21, 1968.

Decided Oct. 28, 1968.

---

George A. Johnson, Asst. Defender, Defender Association of Phila., Philadelphia, Pa., for appellant.

Welsh S. White, Asst. Dist. Atty., Philadelphia, Pa., (Michael J. Rotko, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief, for appellee.

Before McLAUGHLIN, FORMAN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

On February 10, 1947, the appellant, Louis McCloud, at present an inmate of the Correctional Institution, Philadelphia, Pennsylvania, was arrested with several others. He asserts that but for a perfunctory appearance before a magistrate on February 15, 1947, they were detained until February 18, when they were taken before the magistrate for a preliminary hearing. Thereafter appellant was remanded to jail pending grand jury action.

A grand jury returned to the Court of Oyer and Terminer and General Jail Delivery of the County of Philadelphia twenty-two true bills of indictment against appellant and one or more co-defendants on April 16, 1947. The charges were chiefly for assaults and robberies while armed. Appellant pleaded guilty to each indictment on April 21, according to an endorsement on its cover, and on May 1, he was sentenced to a term of not less than 15 nor more than 35 years.[1]

In 1960 he was released on parole. However, he was returned to prison as a violator in 1961, meanwhile having been convicted of another offense in Bucks County, Pennsylvania.

Appellant's first attack upon his sentence came with the unsuccessful pursuit of his post conviction remedies in the courts of Pennsylvania in 1965. His petition for a writ of habeas corpus was dismissed without hearing by the Court of Common Pleas Number 3 of Philadelphia at No. 1392 June Term 1965. Its action was affirmed by the Pennsylvania Superior Court, Commonwealth ex rel. McCloud v. Rundle,[2] and the Pennsylvania Supreme Court denied leave to appeal.

Thereupon appellant filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. Its finding that he had exhausted his state court remedies is not in dispute. In his petition appellant alleged that following his arrest he and his co-defendants were detained in various police stations where police officers subjected him to long interrogations, prevented him from sleeping and failed to supply him with proper food. They also beat him and held him incommunicado for eight days, when they had coerced a confession of the offenses for which he was subsequently indicted. Only then was he taken before a magistrate for preliminary hearing. He con-

---

1. Sentence was imposed on only two of the indictments. On indictment Number 271 of the Court of Oyer and Terminer and General Jail Delivery of the County of Philadelphia, March Sessions, 1947, it was for not less than ten nor more than twenty years. On Indictment Number 273 in the same court, April Sessions, 1947, the sentence was for not less than five years nor more than fifteen years, to be served after the sentence on Indictment Number 271.

2. 207 Pa.Super. 735, 216 A.2d 103 (1966).

tended that the confession so extorted from him tainted the guilty pleas later entered. Also he asserted that the pleas were induced by the police officers' threats and deceitful representations that a lenient sentence would be imposed on him by reason of his youth and because his record was free from any previous serious crime. The District Court held a hearing in which the appellant appeared pro se. Subsequently a second hearing was afforded at which time appellant was represented by an attorney of the Defender Association of Philadelphia. The District Court denied the petition but granted appellant's motion for a certificate of probable cause.

This appeal followed which appellant grounded on the failure of the District Court to sustain his attacks upon the confession and guilty pleas. He reiterated the arguments made to the District Court and emphasized that at the time of the entry of the pleas he was ignorant of their import being 'but 19 years of age with the intelligence of only a middle grade moron with no prior criminal record[2a] and that

> "he was not questioned by the court as to his knowledge of the charges against him, his understanding of his pleas, his willingness to plead nor about any threats, coercion, * * * or reasons, in regard to the circumstances surrounding the entering and accepting of the plea."

In addition he emphatically asserts that his pleas of guilty were motivated by his coerced confession and that this tainted and rendered them invalid as violative of his due process under the Fourteenth Amendment.

In its opinion[3] the District Court conceded that the problem of deciding whether the confession by appellant was involuntary, first raised eighteen years after the event, was a perplexing one.[4] It closely analyzed the testimony of the appellant describing the alleged illegal police conduct. It also examined that of an attorney, Louis Lipschitz, Esq., called by appellant to corroborate his charges of police brutality. Mr. Lipschitz represented one of appellant's co-defendants, William Roberts, and testified to observing bruises and discolorations on his client and on the other defendants when they were brought before the magistrate on February 18, 1947. He also testified that on the occasion of a visit in an office on the second floor of the police station he noticed a length of rubber hose. It was on this floor that the defendants were confined.

Although the District Court was not inclined to place credence in appellant's story of the alleged misconduct of the police officers in connection with the confession, the testimony of Mr. Lipschitz gave it pause and made it regret the questions raised could not be answered because the participants were no longer available. It found, as pointed out by the Commonwealth, that there were inconsistencies in appellant's testimony and concluded:

> "In view of the many inconsistencies alluded to above, as well as several gaps left open in the record which can never be filled in, it is impossible for this Court to state categorically whether

---

**2a.** A record of the Public Defender Agency admitted in evidence referred to a telephonic report from a "Miss Lee, Mun Ct." that "deft. is a middle grade moron as of the age of 17 years."

**3.** United States ex rel. McCloud v. Rundle, 272 F.Supp. 977 (E.D.Pa.1967).

**4.** The District Court correctly commented that although criteria for judging the validity of a confession and plea enunciated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) did not apply retroactively to the 1947 setting of the instant case, traditional case law prior to those recent authorities could be invoked under which coerced confessions were vulnerable to attack, citing Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). See also Davis v. State of North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed. 2d 895 (1966).

relator's confession was, in fact, involuntarily induced by the police. We are of the opinion that relator has not sustained his burden of proof with respect to that issue." [5]

The undisputed fact alone that appellant was held incommunicado by the police from February 10 until February 18, shortly after the time of his confession, bears sharply upon the voluntariness of a statement secured from him after such lengthy custody.[6] Little is to be gained, however, by questioning the soundness of the District Court's conclusion that appellant failed to sustain his burden of proving that his confession was involuntary for, as did the District Court, we may assume for the purposes of argument that the confession was indeed coerced.[7] Had the confession been admitted at a trial over appellant's objection, there is little doubt that a conviction resulting therefrom would have been set aside.

Such was not the case at bar. Here the appellant did not test the admissibility of the confession at trial, but entered pleas of guilty to the indictments. It is intimated by appellant that the guilty pleas were taken before Honorable Francis Shunk Brown, Jr., Presiding Judge of the Court of Quarter Sessions, Philadelphia County, as represented by the notes of testimony offered in evidence in the District Court. That transcript, bearing the dates of April 28 and May 1, 1947, is entitled:

> "Hearing of Evidence of Guilty Pleas of LOUIS MCCLOUD, CHARLES DEMPSEY, JOSEPH DEMPSEY, WILLIAM E. CARROLL and JOSEPH HORNER, and on Verdicts of Guilty as to WILLIAM ROBERTS."

The transcript fails to disclose the actual entry of the pleas but begins with the testimony of a detective who recited chronologically the lengthy list of burglaries and hold-ups naming the appellant and other participants in each. The only record of the entry of appellant's guilty pleas is found in the indictments themselves, each of which bears a notation of the entry of a guilty plea on April 21, 1947.[8]

The proceeding before Judge Brown on April 28, 1947, to which both the Commonwealth and appellant refer as a trial, appears to have been a hearing in the nature of a presentation of pre-sentence information by the Commonwealth concerning appellant and each of his co-defendants and the offenses charged against them, with an opportunity for each defendant to submit to the court a statement prior to the imposition of sentence. Appellant and all the other defendants were represented by their joint Volunteer Defense Attorney. In mitigation, counsel informed the court that appellant was of limited mental capacity and introduced his father who addressed the court stressing favorable aspects of appellant's conduct. The April 28 session was adjourned until May 1, when the court proceeded to sentence each defendant. Appellant was again represented by the same counsel. In reply to questions by the court appellant admitted that he had participated in a large number of hold-ups and personally pleaded for clemency. Counsel again stressed reasons for mitigating punishment. The sentence was then imposed.

---

5.  272 F.Supp. at 981.

6.  See cases cited in Jones v. Cunningham, 313 F.2d 347, 351 n. 13 (4 Cir.), cert. denied, 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963).

7.  Some of the circumstances to which the District Court referred appear to be mental lapses or otherwise excusable. However, in the light of our assumption of the involuntary character of the confession the considerations of the District

Court in this regard are without effect on the final disposition of this appeal.

8.  The twenty-two indictments were in evidence at the hearing before the District Court. On two of them notations of sentences imposed thereon appear over the signature of Judge Brown. On several of the other indictments is found endorsement of his approval that they should be nolle prossed. The final disposition of the remainder of them was not shown.

There is really but one overall issue in this case and that is whether the pleas of guilty entered by appellant were involuntary in that they were induced by his allegedly coerced confession. If appellant's pleas of guilty were indeed induced by a coerced confession and thus were deprived of their character as voluntary acts they are void.[9] A conviction based upon such pleas is open to collateral attack.[10] Of equal relevance is the precept:

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. * * * "[11]

In more recent times a transcript of the proceedings at which a plea of guilty was entered would be readily available and would be revealing on the question of whether the court taking the guilty plea had acquitted itself of its responsibility of assuring that the defendant was represented by counsel, understood the nature of the plea and the consequences which would flow from its entry—such as the maximum sentence that could be imposed—and that it was offered voluntarily, induced neither by threats nor by promise of reward. Unfortunately no transcript of the proceeding at which appellant's pleas of guilty were entered, which occurred now over twenty-one years ago, was produced for the record herein. As has been stated the entry of each plea is only noted on the cover of the respective indictment.

In the absence of an adequate record indicating that the trial court has properly ascertained whether a guilty plea was knowingly and voluntarily entered, it is incumbent upon the federal habeas corpus court to make this determination on the basis of all the relevant facts and circumstances.[12] In this connection, it should be pointed out that the strong presumption of constitutional regularity which attaches to a state court conviction when collaterally attacked,[13] may be overcome where there is no record of the state court proceedings or where such a record does exist, but shows that the trial court did not properly question the defendant on accepting his plea. Although the federal standards for determining the voluntariness of a guilty plea have not as yet been imposed upon the state courts,[14] it is nonetheless significant that under Rule 11 of the Federal Rules of Criminal Procedure, even prior to its amendment in 1966, the burden of proof did in fact shift to the Government where the terms of the rule were not complied with.[15] Prior to 1966, Rule 11 required only that "the court * * * shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.

9. See United States ex rel. Collins v. Maroney, 382 F.2d 547 (3 Cir. 1967).

10. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); United States v. Tateo, 214 F. Supp. 560, 565 (S.D.N.Y.1963).

11. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

12. Busby v. Holman, 356 F.2d 75 (5 Cir. 1966); United States v. Morin, 265 F.2d 241 (3 Cir. 1959); Cf. Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 223 A.2d 699 (1966).

13. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

14. See Gilmore v. People of State of California, 364 F.2d 916, 919 (9 Cir. 1966).

15. See, e.g., Munich v. United States, 337 F.2d 356 (9 Cir. 1964); Domenica v. United States, 292 F.2d 483 (1 Cir. 1961); United States v. Davis, 212 F.2d 264 (7 Cir. 1954).

* * * " [16] This standard would appear to be nothing more than the constitutional mandate as enunciated by the Supreme Court in Kercheval v. United States.[17] In conformance with this requirement, recent decisions of the Pennsylvania Supreme Court have imposed upon the Commonwealth's trial courts the responsibility of determining whether a guilty plea is knowingly and voluntarily entered.[18] This combination of factors leads to the conclusion that in the instant case the Commonwealth had the burden of proving that appellant's guilty pleas were voluntary.

■ The relevant facts and circumstances in the record fulfill the Commonwealth's burden. There is no question that appellant was represented by counsel at the time the pleas were offered and that the Volunteer Defenders Association had sent one of its representatives to interview appellant in jail soon after his February 18, 1947 arraignment before the magistrate. Later he was again visited by an attorney of the Association who discussed the case with him. It is not strange that, as was represented here, the attorney's memory of the details of his appearance with appellant has faded in the decades that have elapsed, so that his testimony as a witness to the events would be unproductive. The record nevertheless fills gaps concerning the entry of the pleas. That appellant was aware of the nature of the offenses to which he pleaded is made apparent by his answers at the pre-sentence hearing on April 28, 1947. He had heard a detective recite the list of crimes with which he was charged and in response to an inquiry by his own counsel he replied that he had committed the robberies.

When appellant was called as a witness for the Commonwealth during the trial of William Roberts on April 24, four days prior to his pre-sentence hearing, he conceded his participation in many robberies designating Charles and Joseph Dempsey as his confederates. This admission was apparently given with complete freedom with the objective of exculpating Mr. Roberts.[19]

In the District Court appellant also disclosed that he was aware of the difference between a guilty and non-guilty plea at the time he entered his pleas. At the same time he expressed an awareness of the seriousness of the consequences which could have followed the entry of the guilty pleas when he conceded that he was afraid of "getting maybe 150 to 200 years."

16. The present rule in pertinent part reads:
"The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

17. See text accompanying note 11, supra.

18. "When confronted with a defendant who manifests an intention to plead guilty to a criminal charge, even though that defendant may be represented by competent counsel, the courts of this Commonwealth must be assured that the plea is the product of the defendant's own voluntary and intelligent choice."

Commonwealth ex rel. West v. Myers, 423 Pa. 1, 7, 222 A.2d 918, 922 (1966). See Commonwealth v. Garrett, 425 Pa. 594, 599, 229 A.2d 922, 925 (1967); Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424, 426 (1964). Pa.Crim.R. 319(a), 19 P.S.Appendix now provides that the court "shall not accept [a guilty plea] * * * unless it determines that it is competently and intelligently made."

19. In Commonwealth v. Roberts, 161 Pa. Super. 548, 554, 55 A.2d 577, 579 (1947), in reviewing Mr. Roberts's conviction, Judge Dithrich noted:
"Louis McCloud, who made the statement which was signed by the other defendants, when called as a Commonwealth witness, testified on direct examination that the appellant defendant was not with him and the other defendants in the commission of the robberies on January 29 and February 10, * * * "

The record leaves little doubt, despite appellant's protestations that he was unprotected by an interrogation of the court at the time of his entry of the guilty pleas, that he was intelligently cognizant of all the information that the court could have imparted to him and was, as held by the District Court, competently represented by counsel.

Appellant contends that he made known in court his allegations of coercive conduct upon the part of the police in extorting the confession but to no avail. It is true that during the presentence hearing the court questioned appellant as to a variance between his statement concerning the complicity of William Roberts in certain of the robberies and his testimony at the trial of Mr. Roberts that the latter was not involved. In response to such questioning the appellant replied that the reason he had given the statement was that he was struck by the police officers and "did not want to get hurt, get more beatings." [20] It is to be recalled, however, that this colloquy took place after the guilty pleas were entered and after appellant, four days earlier, had voluntarily admitted the commission of the robberies in his testimony at Mr. Roberts's trial. The belated reference by appellant to the coercive circumstances of the confession thus came after the plea of guilty and other voluntary admissions of guilt and did not militate against the validity of the guilty pleas.

Appellant also complains that his counsel was ineffective when he advised him that in view of the confession appellant had given the police, the best course for him to pursue was to plead guilty and rely on his youth and his record, barren of conviction for serious offenses, to influence the court to deal mercifully with him. Moreover he now charges that his

lawyer failed him equally importantly by his act of omission in not apprising him that his confession to the police was susceptible to attack as the product of threats and brutal coercion. Hence, he argues, his pleas of guilty were involuntary because they were tainted by his coerced confession and must fall.

Appellant's representations in this regard failed to impress the District Court. Nor are we persuaded by them. Appellant leaves to inference that had his attorney advised him of the vulnerability of his confession as being coerced, he would have gone to trial and contested its admissibility. Appellant was charged in multiple indictments involving numerous alleged victims before some of whom he had been exposed for identification.[21] A representation was made that some identified stolen property had been found upon his person. The probability that out of the welter of charges the Commonwealth was in position to produce at least some substantial evidence of the offenses, quite apart from the confession, could have been a forceful factor in the attorney's advice to enter the guilty pleas and in appellant's motivation in offering them. Particularly cogent in this situation was the comment in Doran v. Wilson [22] that:

"It can be argued that in every case where the government has obtained evidence by conduct that violates the Fourth Amendment, or has obtained statements in a manner that violates the Fifth and Sixth or either of them, its possession of such evidence will necessarily enter into a defendant's decision to plead guilty. But a decision to plead guilty can still be free and voluntary under these circumstances, and that is all that is required. A defendant's primary motivation in pleading guilty, regardless

---

20. The colloquy was immediately followed by the question of the attorney of the appellant as to whether he was guilty of the crimes and appellant's affirmative answer. It would seem to be a legitimate inference that the attorney had heretofore been informed by appellant of his guilt.

21. In the transcript of testimony of the trial of William Roberts in evidence before the District Court several witnesses identified appellant as being involved in the robberies.

22. 369 F.2d 505, 507 (9 Cir. 1966). (Citations omitted.)

of what has gone on before, may be his own knowledge of his guilt and a desire to take his medicine. * * * "

In that case the court held that whether the defendant was so motivated was a question as to which he was entitled to a hearing by a habeas corpus judge and accordingly remanded it for that purpose.

In the present case the District Court afforded appellant a full and fair hearing during which it had the opportunity to observe appellant as he testified on two days. After a review of all the evidence before it, the District Court concluded:

"that [appellant's] * * * confession, if in fact coerced, did not taint or induce his guilty plea. In short, relator entered his plea knowingly and voluntarily with the expectation of a lighter sentence and was disappointed with a 15 to 35 year sentence." [23]

Appellant was not rushed from the site of his confession into court for pleading.[24] Over two months elapsed between his confession and the entry of his guilty pleas. During this time he conferred with his counsel. It is understandable that no elaborate plans for a defense to the charges were designed by the attorney then. Of course with the many intervening years of hindsight appellant sees himself as defending the indictments and successfully overcoming them. But that the Commonwealth, without the benefit of the confession, would have prevailed on some of them, with severe sentences as a consequence, is at least an equal if not a more realistic conjecture. As it is the sentences on the pleas of guilty were very heavy but in no case could they have been predicted with certainty. Looking backward then, the attorney cannot be faulted as having failed to give him effective advice. Counsel's course in this case was reasonable and certainly does not appear to be "so grossly inept as to shock the conscience of the court and make the proceedings a farce and a mockery of justice." [25] In addition to the formal entry of his guilty pleas in close proximity to the time thereof on several occasions he freely admitted in open court that he was guilty of the offenses charged against him, under patently voluntary circumstances. He conceded that he was aware of the difference between a guilty and not guilty plea and of the lengthy sentence that could flow from a conviction. On an independent view the entire record discloses adequate support for the District Court's conclusion that the guilty pleas were knowingly and voluntarily entered.

Another charge of ineffective representation is that the interest owed by the attorney to appellant conflicted with that of one of his co-defendants. This, appellant asserts, manifested itself in a more adequate plea for clemency for the co-defendant than in appellant's behalf. The charge is without merit.

Finally, it is appropriate to consider an argument lengthily discussed by appellant in anticipation that the Commonwealth would charge that under Henry v. State of Mississippi [26] he had "deliberately bypassed" the orderly procedure of the state court, thus precluding the raising of the issue of the alleged involuntary confession in the federal habeas corpus proceeding. Appellant distinguished Henry, a ruling by the Supreme Court on a direct appeal, from a proceeding in a federal habeas court and pointed to its reservation that

"a dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that

---

23. 272 F.Supp. at 982.

24. Compare Gladden v. Holland, 366 F.2d 580 (9 Cir. 1966).

25. Busby v. Holman, 356 F.2d 75, 79 (5 Cir. 1966).

26. 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

petitioner deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, supra, 372 U.S. 391, at 438, 83 S.Ct. 822, 9 L.Ed.2d 837." [27] Appellant then argued that on the facts of this case there had been no "deliberate bypass."

As expected, the Commonwealth did advance such a proposition, asserting that the District Court had properly found a "waiver of [appellant's] * * right to attack the voluntariness of his confession." [28] Yet no explicit finding was made by the District Court that the failure by appellant to object to the confession in the state court constituted a waiver of his federal constitutional right. The only remark made by the District Court in this connection was:

"The record also indicates that relator had consulted his court-appointed counsel prior to entering his pleas. During the discussions the tactical decision was made to plead guilty with the hope of obtaining leniency." [29]

This does not amount to the finding the Commonwealth asserts. It was not a ruling on an issue of "deliberate bypass" but rather disclosed the court's reasoning to the conclusion that the pleas were voluntary.

We would here be confronted with a difficult and perplexing issue if the District Court had denied appellant a hearing on his contentions with respect to the voluntariness of his confession. However, that is not the case, for the District Court did grant a hearing, concluding that the factual record did not sustain a finding of involuntariness. Therefore, under Fay v. Noia,[30] the issue of "deliberate bypass" becomes irrelevant. In *Fay*, the Supreme Court held:

"Federal courts have *power* under the federal habeas statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies; the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute. * * * " [31]

In the instant case the District Court apparently exercised its discretion to grant McCloud a hearing on the issue of voluntariness.[32] In doing so it acted appropriately within the directives laid down in Fay v. Noia and Townsend v. Sain.[33]

The order of the United States District Court for the Eastern District of Pennsylvania of August 8, 1967 denying the petition for a writ of habeas corpus will be affirmed.

27. Id. at 452, 85 S.Ct. at 570.

28. The District Court commented on the position taken by the Commonwealth as follows:
"[I]t should be noted that the Commonwealth does not contend that relator waived his right to *challenge* the constitutional infirmity of his confession. It is the position of the Commonwealth, as will be discussed infra, that both his confession and later pleas were purely voluntary as disclosed by the full record. The District Attorney has relied upon the well-accepted doctrine that if relator's guilty pleas were voluntary then his conviction rests upon that plea and all non-jurisdictional defects are waived. * * * " 272 F. Supp. at 979.

29. 272 F.Supp. at 982.

30. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

31. Id. at 398–399, 83 S.Ct. at 827.

32. See United States ex rel. Gockley v. Myers, 378 F.2d 398, 400 (3 Cir. 1967).

33. In Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), the Court said:
"The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew."

862

FREEDMAN, Circuit Judge (dissenting).

The district court held extensive hearings on this problem which it described as a "perplexing one".[1] It held that a heavy burden of proof that the confession was coerced rested on relator,[2] and that he had not sustained it.[3] The district court then assumed arguendo that the confession was involuntary and on this assumption applied its view that the burden of proof that the guilty plea was substantially affected by the coerced confession lay on the relator.[4] It concluded that the plea was voluntary.

The majority here, without discussion of the burden of proof on the voluntariness of the confession, apparently finds that the confession was coerced.[5] The majority then goes on to say that in the present case, where no transcript or other record exists which would reveal the circumstances surrounding the plea, the burden of proving that the plea was voluntary rests on the prosecution. After reviewing the facts, the majority finds that the prosecution has established the voluntariness of the plea.

I agree that the confession was coerced and that the burden of proving that the guilty plea was voluntary rests on the prosecution. But it seems to me that before we undertake to judge the facts ourselves, we should afford the district court an opportunity to re-evaluate them in the light of the correct standard.

I therefore would reverse the judgment of the district court and remand the cause for further proceedings there.

1. United States ex rel. McCloud v. Rundle, 272 F.Supp. 977, 980 (E.D.Pa.1967).

2. Ibid. at 980.

3. Ibid. at 981.

4. "To be entitled to a writ relator must establish that the coerced confession played a substantial role in motivating or inducing the subsequent plea of guilty." Ibid. at 981.

5. "The undisputed fact alone that appellant was held incommunicado by the police from February 10 until February 18, shortly after the time of his confession, bears sharply upon the voluntariness of a statement secured from him after such lengthy custody. [Citations omitted.] Little is to be gained, however, by questioning the soundness of the District Court's conclusion that appellant failed to sustain his burden of proving that his confession was involuntary for, as did the District Court, we may assume for the purposes of argument that the confession was indeed coerced. [Citations omitted. *Had the confession been admitted at a trial over appellant's objection, there is little doubt that a conviction resulting therefrom would have been set aside.*" [Italics supplied.]